2007-NMCA-014

150 P.3d 1003

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Justo RUIZ, Defendant–Appellant.**

**No. 24,536.**

Court of Appeals of New Mexico.

Nov. 22, 2006.

Certiorari Denied, No. 30,160, Jan. 18, 2007.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Justo Ruiz (Defendant) appeals multiple convictions for criminal sexual penetration of a minor (CSPM) and criminal sexual contact with a minor (CSCM). He raises eight issues challenging (1) the denial of a motion to recuse; (2) the procedure utilized by the district court in order to assess the admissibility of the victim's testimony; (3) the admission of evidence of prior bad acts; (4) the admission of hearsay statements by the victim; (5) the exclusion of a demonstrative aid; (6) the exclusion of a character witness for the defense; (7) the admission of the testimony of a "surprise" rebuttal witness; and (8) the refusal of a proposed jury instruction concerning a viewing of the scene. We reject Defendant's assertions of error and, therefore, affirm.

## I. BACKGROUND

{2} Defendant's convictions stem from a series of incidents that occurred between November 1, 1995 and January 31, 1998. Throughout that time frame, the victim (S.G.) was a friend of one of Defendant's daughters and she frequently visited the Ruiz household.

{3} In July of 1998, Officer Stan Mascarenas contacted S.G.'s mother. He indicated that Defendant's eldest daughter, Lupita, claimed to have witnessed an incident in which Defendant looked between S.G.'s legs. A safehouse interview was scheduled several days later. In the interim, S.G.'s mother repeatedly questioned S.G. in an effort to

determine whether a sexual assault of some sort had occurred. Initially, S.G. denied that anything serious had happened. Upon further inquiry, however, S.G. disclosed that Defendant had touched her. Thereafter, S.G. described increasingly grave assaultive episodes.

{4} In light of S.G.'s allegations, Defendant was charged with numerous counts of CSPM and CSCM. These charges were combined with a number of additional counts arising out of Defendant's alleged misconduct with two other child victims and tried to a jury in December of 1999. Although the jury returned a number of guilty verdicts, Defendant's convictions were reversed on grounds that the counts associated with different victims were improperly tried in a single proceeding, rather than severed.

{5} On remand, Defendant was charged with two counts of CSCM and three counts of CSPM based exclusively on S.G.'s allegations. Prior to trial, Defendant filed two related motions. In the first motion, Defendant urged the district judge to recuse himself based on certain expressions of personal opinion that had been articulated at the sentencing hearing in the course of the first trial. In the second motion, Defendant sought a ruling on the admissibility of S.G.'s testimony, arguing that suggestive and/or coercive interview techniques had so severely compromised her credibility that she should be barred from appearing as a witness. Both motions were denied.

{6} The prosecution's key witness was S.G., who testified that Defendant had begun touching her when she was in the third grade. The touching later progressed to penetration. S.G. also testified that Defendant would cause her to touch him and to perform fellatio. S.G. indicated that this course of conduct continued throughout the fourth and fifth grades until she ceased visiting the Ruiz household.

{7} Defendant's eldest daughter, Lupita, testified at trial as well. She described an incident in July 1997, where she witnessed Defendant touching S.G.'s vagina. Lupita explained that she told her mother about this incident a year later. Her mother then notified the authorities, triggering the official

inquiry. Lupita further testified that she wrote about the incident in her diary, which her mother later turned over to investigating officers.

{8} Among other witnesses, the State also called S.G.'s mother. She described her efforts to learn what, if anything, had happened to S.G. at the Ruiz household. She also testified to warning signs that she had missed over the years, including questions and/or comments that S.G. had made, suggesting that she had been the victim of sexual assaults.

{9} Finally, the State called Dr. Cheryl Whitman, a physician who had conducted a sexual assault examination in this case. She testified that the exam revealed two partial transections of the hymen and the hymenal opening was abnormally large for a girl of S.G.'s age. Dr. Whitman opined that these conditions were consistent with sexual abuse, although she acknowledged that her findings could not be characterized as conclusive.

{10} The theory of the defense focused on credibility. Although Defendant's character witness was not permitted to describe his reputation for truthfulness, Defendant was permitted to call a forensic psychologist, Dr. Ned Siegel, who opined that Defendant did not fit the standard profile for pedophilia. Defendant also called two expert witnesses to attack S.G.'s credibility. One of the witnesses, Dr. Charles Glass, testified that, in light of S.G.'s personality type, she would be highly susceptible to suggestion. The other witness, Dr. Phillip Esplin, identified suggestive interview techniques and described the negative impact of such techniques on the reliability of sexual abuse reporting. In response to a series of hypothetical questions, Dr. Esplin opined that the repetitive questioning to which S.G. was subjected, as well as the relative lack of specificity and the increasing gravity of her allegations, over time gave rise to concerns about false memories, which could then result in false accusations. Over Defendant's objection, the State was permitted to call an expert witness in rebuttal, Dr. Michael Jepsen, who testified that it was unlikely that the sort of question-

ing that took place in this case would generate false memories.

{11} Upon Defendant's motion, the jury was also transported to the Ruiz home to view the scene. After the viewing, Defendant requested an instruction, clarifying that the jurors should not assume that the furnishings that they saw had been in the same locations as they had been at the time of the alleged sexual assaults. The requested instruction was denied.

{12} At the conclusion of the four-day trial, the jury deliberated briefly before returning guilty verdicts on all counts. Defendant was sentenced to sixty years. This appeal followed.

## II. DISCUSSION

### A. Recusal

{13} Defendant contends that the district court erred in denying his motion to recuse. We review the district court's decision for abuse of discretion. *See State v. Cherryhomes,* 114 N.M. 495, 500, 840 P.2d 1261, 1266 (Ct.App.1992).

{14} Defendant asserts that the district judge should not have presided over the second trial because he expressed a bias in the course of his remarks at the sentencing hearing, which followed the first trial. Specifically, the judge described his historical experiences dealing with allegations of sexual abuse and his efforts over the years to develop a sense about the veracity of such allegations. He then stated that, in light of this backdrop of experience, he thought that S.G. and the other victims involved in the first trial were being truthful and he believed that Defendant had sexually abused the victims.

{15} "In order to require recusal, bias must be of a personal nature against the party seeking recusal." *State v. Hernandez,* 115 N.M. 6, 20, 846 P.2d 312, 326 (1993). Moreover, the bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United Nuclear Corp. v. Gen. Atomic Co.,* 96 N.M. 155, 247, 629 P.2d 231, 323 (1980) (internal quotation marks and citation omitted).

{16} In satisfaction of the extrajudicial source requirement, Defendant relies upon the district judge's comments concerning his training and experiences in dealing with cases involving allegations of sexual abuse. However, these are not extrajudicial sources. As we have previously observed, "members of ... all courts ... are human beings. They cannot avoid having histories or opinions; indeed, they may well have been selected for their offices in part on that basis. Recognition of this reality counsels us against requiring that every decisionmaker start with a clean slate." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces,* 1997–NMCA–031, ¶ 26, 123 N.M. 239, 938 P.2d 1384.

{17} Nor does the judge's comments "stem from ... some basis other than what [he] learned from his participation in the case." *United Nuclear Corp.,* 96 N.M. at 247, 629 P.2d at 323 (internal quotation marks and citation omitted). To the contrary, his opinions were based precisely upon what he heard and observed in the course of the proceedings. To the extent that Defendant suggests that the proceedings on remand constituted a separate case, we reject the argument. *See State v. Belgarde,* 62 Wash. App. 684, 815 P.2d 812, 816–17 (1991) (observing that a defendant's retrial, following reversal of an earlier conviction, constituted further proceedings in the same case as opposed to new proceedings or a new case).

{18} Our reported decisions indicate that, in cases such as this where a new trial is conducted on remand, "whether the original judge would reasonably be expected ... to have substantial difficulty in putting out of his or her mind previously-expressed views or findings," is to be taken into consideration. *State v. Ricky G.,* 110 N.M. 646, 649, 798 P.2d 596, 599 (Ct.App.1990) (internal quotation marks and citation omitted). Defendant asserts that the application of this standard to the case at hand indicates that the district judge should have recused himself, primarily in light of the critical importance of credibility determinations throughout the proceedings.

{19} As a practical matter, we acknowledge that the expression of personal opinion about the credibility of a complaining witness and the guilt of a defendant gives rise to question whether the judge could put such opinions out of his or her mind in order to ensure that the defendant received a fair trial on remand. However, authorities establish a presumption that judges will be able to set aside previously-expressed opinions and preside in a fair and impartial manner on remand. *See, e.g., United States v. Howard*, 218 F.3d 556, 566 (6th Cir.2000) (holding that the fact that the judge on remand had presided over the defendant's first trial and had expressed the opinion that the victim's testimony was highly credible did not support recusal for bias); *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir.1983) (holding that the judge's stated belief that the defendant was guilty did not disqualify the judge from presiding on remand); *In re S.G.*, 91 P.3d 443, 447 (Colo.Ct.App.2004) (observing that "a judge's opinion formed against a party from evidence before the court in a judicial proceeding, even as to the guilt or innocence of a defendant, is generally not a basis for disqualification"); *Frederick v. State*, 37 P.3d 908, 951–52 (Okla.Crim.App.2001) (rejecting a claim of judicial bias based on comments that the defendant's first conviction and sentence should have been affirmed and that retrial was unnecessary where the record demonstrated that the judge conducted proceedings appropriately on remand). Although we seriously question the ability of any judge to perform in anything but a normal human capacity as shown by these expressly partial or biased statements and opinions, we are not inclined to contravene that weight of authority. We, therefore, reject Defendant's argument as a basis for reversal of his convictions.

## B. Assessment of Admissibility of Testimony of S.G.

{20} Defendant contends that the district court applied the wrong legal standard when assessing the admissibility of S.G.'s testimony. We apply de novo review. *See State v. Torres*, 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal.").

{21} Prior to trial, Defendant filed a motion seeking to exclude S.G.'s testimony on the theory that suggestive and/or coercive interview techniques had so severely undermined the reliability of her memories that she should be prohibited from testifying. Defendant, therefore, sought a "taint" hearing pursuant to a novel procedure employed in New Jersey as set forth in the case of *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994). Although the district judge expressed some doubt about the applicability of the *Michaels* approach, he conducted a hearing in order to assess the admissibility of S.G.'s testimony. At the hearing, Defendant presented the testimony of two experts, Drs. Esplin and Glass. They characterized the questioning to which S.G. had been subjected as suggestive and identified problematic features of her reporting. Dr. Esplin concluded that there was a "*substantial likelihood* that some of the information obtained from S.G. was not reliable" and Dr. Glass opined that S.G.'s memories were "not … necessarily valid." The State responded through cross-examination and argument, asserting that, while any negative effect that the various interviews might have had on the reliability of S.G.'s recollections, it did not provide an adequate basis for the wholesale exclusion of her testimony. At the conclusion of the hearing, the district judge announced that Defendant's motion to exclude S.G.'s testimony would be denied. The ruling was later memorialized in a written order.

{22} On appeal, Defendant contends that the district court erred in failing to strictly adhere to the approach outlined in *Michaels*. We disagree. Although New Mexico's courts have recognized the dangers associated with suggestive interviewing techniques in cases of this nature, *see In re Troy P.*, 114 N.M. 525, 528, 842 P.2d 742, 745 (Ct.App.1992), neither this Court, nor the New Mexico Supreme Court, has adopted the novel *Michaels* approach, which places a heavy burden on the proponent of child victim testimony to establish its reliability. Like many other states, New Mexico rejects *Michaels* in favor of our well-established competency jurispru-

dence. *See, e.g., Pendleton v. Kentucky,* 83 S.W.3d 522, 525–26 (Ky.2002), *superceded by Jones v. Kentucky,* 2003 WL 21713776, at *1 (Ky.Ct.App. July 25, 2003); *English v. State,* 982 P.2d 139, 145–47 (Wyo.1999); *In re A.E.P.,* 135 Wash.2d 208, 956 P.2d 297, 307 (1998) (Talmadge, J., dissenting) (en banc); *State v. Olah,* 146 Ohio App.3d 586, 767 N.E.2d 755, 758–60 (2001); *Ardolino v. Warden, Me. State Prison,* 223 F.Supp.2d 215, 237–39 (D.Me.2002).

{23} In New Mexico, we apply a general presumption that all persons are competent to appear as witnesses. *See* Rule 11–601 NMRA. When an individual's competency to testify is challenged, the district courts are merely required to conduct an inquiry in order to ensure that he or she meets a minimum standard, such that a reasonable person could "put any credence in their testimony." *State v. Hueglin,* 2000–NMCA–106, ¶ 22, 130 N.M. 54, 16 P.3d 1113 (internal quotation marks and citation omitted). This methodology stems from a core principle of modern civil and criminal procedure, whereby questions of credibility are consigned to juries, rather than judges. *Id.; State v. Stampley,* 1999–NMSC–027, ¶ 34, 127 N.M. 426, 982 P.2d 477 ("The jury alone is the judge of the credibility of the witnesses and determines the weight afforded to testimony.").

{24} Our analysis of the record, transcript, and briefs indicates that the district judge proceeded in an appropriate manner. As previously stated, a hearing was conducted at which Defendant was permitted to present extensive expert testimony identifying potential weaknesses in S.G.'s capacity to credibly testify. Dr. Esplin concluded that there was a substantial likelihood that some of the information obtained from S.G. was not reliable, and Dr. Glass opined that S.G.'s memories were not necessarily valid. In light of this testimony, the district judge acknowledged a "possibility that taint occurred." However, the district court did not find the experts' testimonies, or the underlying facts and circumstances, to so severely undermine S.G.'s credibility as to warrant the exclusion of her testimony. Although Defendant does not challenge the propriety of this determination as such, we note no abuse of discretion.

{25} Defendant has challenged the State's reliance upon our competency jurisprudence as a basis for affirmance on grounds that this legal theory was not specifically advanced at the district court level. However, we note that the applicability of the *Michaels* approach was the subject of debate below and, as such, the broader procedural issue was clearly presented for the district court's consideration. Insofar as questions of procedure are quintessentially legal in nature, we reject Defendant's suggestion that reliance upon our competency jurisprudence implicates a fact-dependent inquiry, which cannot properly be considered in the first instance on appeal. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). In summary, therefore, we conclude that the procedure employed by the district court below was appropriate and we reject Defendant's second assertion of error.

## C. Evidence of Prior Bad Acts

{26} Defendant contends that highly prejudicial evidence of uncharged misconduct was improperly presented to the jury. We review the admission or exclusion of evidence of this nature for abuse of discretion. *State v. Otto,* 2005–NMCA–047, ¶ 10, 137 N.M. 371, 111 P.3d 229, *cert. granted,* 2005–NMCERT–004, 137 N.M. 455, 112 P.3d 1112.

### 1. Lupita Ruiz's Testimony

{27} Defendant's eldest daughter, Lupita, described an incident in July 1997, wherein she witnessed Defendant touching S.G.'s genital area. Defendant contends that this testimony constitutes evidence of prior bad acts and, as such, it should have been excluded pursuant to Rule 11–404(B) NMRA. We disagree.

{28} Rule 11–404(B) provides in relevant part: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The inclusion of the word "other" connotes crimes, wrongs, or acts that are not the subject of the proceedings—*viz*—uncharged misconduct.

{29} As described at greater length above, Defendant was charged with five offenses, which were essentially distinguishable by their general nature (contact versus penetration) and timing (annualized). Lupita's testimony provided evidentiary support for one incident of CSCM occurring in July 1997. Insofar as Defendant was charged with a single count of CSCM within that time frame, Lupita's testimony provided direct evidence in support of that charge. Thus, Lupita's testimony cannot properly be classified as evidence of uncharged misconduct, rendering Rule 11–404(B) inapplicable.

{30} In his briefs to this Court, Defendant urges this Court to reject the foregoing analysis on grounds that the arguments were not framed in this manner below. Although the parties focused on Rule 11–404(B) and the historical "lewd and lascivious disposition" exception below, our review of the record reveals that the State also argued that the challenged evidence provided support for the single count of CSCM charged for the 1997 calendar year. As a result, we do not hesitate to rely on this position as grounds for affirmance.

## 2. Cindy Ruiz's Testimony

{31} At trial, the State was permitted to read the prior testimony of Defendant's ex-wife, Cindy Ruiz, into evidence. In pertinent part, this testimony described a specific incident that occurred when S.G. was spending the night as a guest. Believing that Defendant was taking an unusually long time to wish the children good night, she looked into their room and observed Defendant crouching beside S.G.'s bed, stroking her forehead and speaking softly to her.

{32} Defendant objected to the admission of this testimony on grounds that it was irrelevant and it served only to prejudice Defendant by demonstrating that his ex-wife was willing to testify against him. He renews these arguments on appeal, adding that the incident could be classified as a prior bad act subject to exclusion under Rule 11–404(B). We are unpersuaded.

{33} As the State argued below, the occurrence described by Cindy tended to establish that Defendant behaved in an unusual manner, displaying a peculiar form and degree of attention toward S.G. The challenged testimony, therefore, tended to rebut two arguments advanced by the defense that (1) Defendant could not have committed the alleged assaults because they occurred in a very small house and the other occupants did not witness anything suspicious; and (2) Defendant could not have committed the alleged assaults because he did not pay special attention to S.G., or otherwise endeavor to "groom" her for sexual abuse in the typical manner of pedophiles. As a result, we conclude that Cindy's testimony was both relevant and admissible for purposes apart from the prohibited realm of prior bad acts evidence. To the extent that Cindy's willingness to testify against Defendant prejudiced him, the district court acted well within its discretion in determining that the probative value of her testimony outweighed its prejudicial effect. See Rule 11–403 NMRA; State v. Chamberlain, 112 N.M. 723, 726, 819 P.2d 673, 676 (1991) ("The trial court is vested with great discretion in applying Rule [11–]403, and it will not be reversed absent an abuse of that discretion.").

## D. Hearsay

{34} Defendant also argues that the district court erred by admitting two out-of-court statements that S.G. made to her mother, contending that this evidence constituted impermissible hearsay. Generally speaking, we review evidentiary rulings, including the admission of hearsay, for abuse of discretion. See State v. Lopez, 2000–NMSC–003, ¶ 10, 128 N.M. 410, 993 P.2d 727.

{35} The challenged statements were made by S.G. to her mother sometime in the winter of 1997 or 1998, and evinced concern about pregnancy and/or rape. The State first attempted to introduce evidence of these statements through the testimony of S.G.'s mother on direct examination. Defendant raised a hearsay objection, which the State disputed. After a bench conference, the district court ruled that the statements might be introduced if S.G. was recalled to testify about them. The State complied. On redirect examination, S.G. was only able to

recall in a very general sense that she had asked her mother about these subjects. The district court then permitted the State to recall S.G.'s mother to the stand. She specifically testified that S.G. had stated, "Mom, I think I've had sex" and "Mom, I think I've been raped." This testimony is the subject of Defendant's challenge on appeal.

■ {36} As an initial matter, we must determine whether the statements constitute hearsay. Hearsay is generally defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 11–801(C) NMRA. A statement which is not offered to prove the truth of the matter asserted does not fall within the scope of the general prohibition. Accordingly, a statement offered merely to prove that it was made, and not to prove truth, is characterized as a "verbal act" that is admissible irrespective of any limitations on hearsay testimony. *See State v. Glen Slaughter & Assocs.*, 119 N.M. 219, 222, 889 P.2d 254, 257 (Ct.App.1994); *State v. Aragon*, 85 N.M. 401, 402, 512 P.2d 974, 975 (Ct.App.1973). Similarly, an out-of-court statement made by a witness who testifies at trial is not hearsay if it is offered to rebut an express or implied charge of recent fabrication or improper influence. *See* Rule 11–801(D)(1)(b) NMRA.

{37} As previously noted, the primary theory of the defense was that S.G.'s allegations were the product of suggestive and/or coercive interview techniques. Defendant argued that S.G.'s memories of assaultive episodes were false, having been contrived in the course of the investigatory process. As partial support for this theory, Defendant focused the jury's attention on S.G.'s failure to report the abuse at any time prior to the police investigation. In light of the defense strategy, the challenged statements could properly have been admitted as disclosures. Insofar as Defendant made an issue of S.G.'s failure to report, the fact that the statements were made had probative value independent of truth. This brings them within the verbal acts exception. Insofar as Defendant developed the theory of recent fabrication and/or improper influence, the fact that the state-

ments were made prior to the criminal investigation also tended to rebut this theory. This brings the statements within the exception articulated in Rule 11–801(D)(1)(b). Accordingly, we conclude that the statements could properly have been admitted as non-hearsay.

■ {38} We acknowledge that the district court appears to have admitted the statements on a different legal theory. As a general rule, however, we will uphold the decision of a district court if it is right for any reason. *See State v. Beachum*, 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972) ("A decision of the trial court will be upheld if it is right for any reason."). Given that the State advanced the disclosure argument below, we affirm on that basis. *See generally State v. Fairbanks*, 2004–NMCA–005, ¶ 12, 134 N.M. 783, 82 P.3d 954 (expressing reluctance to affirm based on an argument not advanced below).

### E. Demonstrative Evidence

{39} Defendant contends that the district court erred in prohibiting him from showing the jury photographic images from a medical treatise, which he sought to utilize in the course of cross-examining a witness for the prosecution. We review for abuse of discretion. *See State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984) (holding that the admission or exclusion of evidence is within discretion of the trial court and that such determinations will not be disturbed on appeal absent clear abuse of discretion); *see also State v. Brown*, 1998–NMSC–037, ¶ 25, 126 N.M. 338, 969 P.2d 313 (noting that abuse of discretion is the standard of review for limitations on cross-examination).

{40} The images in question related to the various procedures that may be utilized in order to examine juvenile sexual assault victims. As mentioned above, the State called Dr. Whitman to describe her findings. She testified that she had observed two partial transections of S.G.'s hymen, which are generally regarded as indicative of trauma consistent with sexual abuse. On cross-examination, Defendant sought to undermine the significance of these findings by highlighting shortcomings associated with the "frog leg"

examination position that Dr. Whitman had utilized. To this end, he attempted to display two images from a medical treatise, demonstrating how indicia of hymenal trauma, such as notches or partial transections, which appear when a subject is examined in the "frog leg" position, may disappear when a subject is moved to the "knee-chest" position. The State objected on grounds that Defendant had failed to disclose the images in the course of pretrial discovery. The district court sustained the objection.

{41} The Rules of Criminal Procedure provide that a defendant must disclose "books, papers, documents, [and] photographs," which are in his possession and which he "intends to introduce in evidence at the trial[.]" Rule 5–502(A)(1) NMRA. Defendant contends that because he did not intend to introduce the images from the medical treatise as exhibits, they were not subject to the disclosure requirement. As authority for this position, Defendant relies upon his characterization of the images as "demonstrative evidence." Insofar as the term "demonstrative evidence" encompasses all material that is "addressed directly to the senses of the court or jury ... as where various things are exhibited in open court," Defendant's characterization is probably accurate. *State v. Tollardo*, 2003–NMCA–122, ¶ 10, 134 N.M. 430, 77 P.3d 1023. However, Rule 5–502(A)(1) does not exempt demonstrative evidence from a defendant's duty to disclose. To the contrary, it expressly applies to forms of evidence that are classically demonstrative, such as "tangible objects." *Id.* As such, we reject Defendant's suggestion that demonstrative evidence is subject to a blanket exemption from the general duty of disclosure.

{42} Defendant may rely upon the distinction between the use of demonstrative material as an aid to cross-examination and the designation of such material as "evidence" that is fit for use as a formal exhibit. *See State v. Gallegos*, 92 N.M. 370, 379, 588 P.2d 1045, 1054 (Ct.App.1978) (holding that the district court erred in requiring the defense to disclose a report, which the defense did not intend to introduce into evidence, and which was merely designed to aid in the cross-examination of a witness for the State).

However, even if we were to assume that the images should have been exempted from Rule 5–502(A)(1) in this manner, we do not regard their exclusion as reversible error.

{43} Our review of the transcript reveals that Defendant cross-examined Dr. Whitman very thoroughly on the various examination procedures and the danger of false findings of trauma where the subject is examined in the frog leg position alone. Although the images from the treatise might have bolstered Defendant's argument, there can be no question that the weaknesses in Dr. Whitman's approach and the inconclusive nature of her findings were conveyed to the jury through Dr. Whitman's testimony. As a result, we cannot say that there is a reasonable possibility that the excluded images might have affected the jury's verdict. *See generally State v. Balderama*, 2004–NMSC–008, ¶ 41, 135 N.M. 329, 88 P.3d 845 (observing that "[e]rror in the exclusion of evidence in a criminal trial is prejudicial and not harmless if there is a reasonable possibility that the excluded evidence might have affected the jury's verdict"); *State v. Woodward*, 121 N.M. 1, 12, 908 P.2d 231, 242 (1995) (concluding that the refusal to admit cumulative evidence was not an abuse of discretion).

## F. Character Witness

{44} Defendant challenges the district court's exclusion of character evidence that he sought to introduce through the testimony of a defense witness, Denise Kusel. We review the district court's ruling for abuse of discretion. *See State v. Ewing*, 97 N.M. 235, 237, 638 P.2d 1080, 1082 (1982) (observing that the admission or exclusion of character testimony is committed to the sound discretion of the district court).

{45} Generally speaking, evidence of "a pertinent trait of character" of the accused in a criminal case may be introduced through reputation or opinion testimony. Rule 11–404(A)(1) NMRA; Rule 11–405(A) NMRA. Below, Defendant specifically stated that he sought to call Kusel to testify to Defendant's "reputation for truth in the community." The State objected on grounds that Defendant's truthfulness was not a pertinent trait of character and was not an issue, insofar as

Defendant had not yet testified. The district court agreed. We perceive no abuse of discretion, particularly in light of the district court's invitation to call Kusel after Defendant testified. Although Defendant later elected not to testify, he made no further effort to recall Kusel, or to otherwise renew the matter. Because the district court lacked any opportunity to reconsider in light of the altered defense strategy, it would be inappropriate to second-guess the district court's approach with the benefit of hindsight. *See generally In re Ruben D.*, 2001–NMCA–006, ¶ 21, 130 N.M. 110, 18 P.3d 1063 ("Preservation requires a party to apprise the court of possible error in a timely and specific manner so that the court can prevent it.").

{46} Below, Defendant argued that his character for truthfulness became a pertinent issue after one of his expert witnesses, Dr. Siegel, related the fact that Defendant had denied the charges. The district court rejected this argument on grounds that Dr. Siegel's hearsay comment did not constitute substantive evidence. It merely described a portion of the basis for his opinions. We note that the comment was not offered for the truth of the matter asserted. Under such circumstances, the district court could reasonably have concluded that Dr. Siegel's testimony did not render Defendant's character for truthfulness a pertinent matter within the scope of Rule 11–404(A)(1).

{47} On appeal, Defendant has taken the position that Defendant's character for truthfulness automatically became a "pertinent trait of character" when the jury was informed of the charges. Because this argument was not advanced below, it is not properly before us on appeal. *See generally State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (rejecting a claim of error where the lower court "had no opportunity to consider the merits of, or to rule intelligently on, the argument defendant now puts before us") (citation omitted). Even if the argument had been properly preserved, its merit seems doubtful. Insofar as all of the pending charges were sex crimes, rather than crimes of fraud or deceit, it is unclear how Defendant's character for truthfulness

was implicated. *Cf. State v. Trejo*, 113 N.M. 342, 346, 825 P.2d 1252, 1256 (Ct.App.1991) (observing that a crime of violence has less bearing upon the honesty of a witness than a crime involving fraud or deceit).

{48} Finally, Defendant has suggested that Kusel should have been permitted to testify to other pertinent character traits apart from truthfulness. However, she was not offered for alternative purposes below. We, therefore, have no idea what other pertinent traits, if any, Kusel was competent to testify about. Absent an offer of proof, we are incapable of engaging in a reasoned analysis. *See generally* Rule 11–103(A)(2) NMRA; *State v. Garcia*, 100 N.M. 120, 123, 666 P.2d 1267, 1270 (Ct.App.1983) (concluding that the defendant failed to make an offer of proof as required in order to preserve an issue of whether the district court properly excluded testimony). As a result, the matter is not subject to appellate review. *See State v. Ryan*, 2006–NMCA–044, ¶ 46, 139 N.M. 354, 132 P.3d 1040.

## G. Surprise Rebuttal Witness

{49} Defendant asserts that a surprise rebuttal witness for the State, Dr. Jepsen, was improperly permitted to testify at trial. Both the admission of rebuttal testimony and the election of remedies for discovery violations are within the discretion of the court. *See State v. Simonson*, 100 N.M. 297, 302, 669 P.2d 1092, 1097 (1983); *State v. Wilson*, 2001–NMCA–032, ¶ 39, 130 N.M. 319, 24 P.3d 351, *abrogated by State v. Montoya*, 2005–NMCA–078, ¶ 11, 137 N.M. 713, 114 P.3d 393. We, therefore, review for abuse of discretion only.

{50} In order to evaluate Defendant's assertion of error, we must consider the following factors: (1) whether the State breached some duty, or intentionally deprived Defendant of evidence; (2) whether the evidence was material; (3) whether the non-disclosure of the evidence prejudiced Defendant; and (4) whether the district court cured the failure to timely disclose the evidence. *State v. McDaniel*, 2004–NMCA–022, ¶ 8, 135 N.M. 84, 84 P.3d 701.

{51} With regard to the first factor, we will assume that the State breached a duty, insofar as its failure to timely disclose could have violated Rule 5–501(A)(5) NMRA. However, none of the remaining factors weigh in Defendant's favor.

{52} The second factor—materiality—is established upon a showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *McDaniel*, 2004–NMCA–022, ¶ 11, 135 N.M. 84, 84 P.3d 701 (internal quotation marks and citation omitted). In this case, Defendant has not indicated how early disclosure would have affected the outcome of his trial. Because Defendant has neither challenged the sufficiency of the evidence that led to his convictions, nor claimed that earlier disclosure would have changed his defense at trial, he has not made a showing of materiality. *Id.* ¶ 13.

{53} The third factor—prejudice—similarly depends upon an affirmative demonstration of harm. *See id.* ¶ 6. Although Defendant claims that the failure to timely disclose impeded his cross-examination of the witness, he has not shown how his cross-examination would have been improved by earlier disclosure, or how he would have prepared differently for trial. Moreover, our review of the record reveals that defense counsel's cross-examination was clear, focused, and efficacious. As a result, Defendant has not made a showing of prejudice. *See id.* ¶ 15.

{54} The fourth and final factor—curative action—concerns the form of remedy, or sanction imposed by the district court in response to the untimely disclosure. The transcript indicates that the district court granted defense counsel "ample opportunity" to interview the witness before he testified, recessing for approximately an hour to that end. This appears to have been an appropriate response under the circumstances. *See, e.g., State v. Padilla*, 91 N.M. 800, 803, 581 P.2d 1295, 1298 (Ct.App.1978).

{55} In summary, Defendant had failed to demonstrate materiality, prejudice, or that the district court's curative action was inadequate. We, therefore, reject his challenge to the admission of the testimony of the State's rebuttal witness.

## H. Jury Instruction

{56} Finally, Defendant contends that the district court erred in refusing to instruct the jury about alterations to the arrangement of furnishings in the Ruiz household. We review the matter de novo. *See State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996 ("The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo.").

{57} Defendant's proposed instruction was as follows: "This morning you were provided with a jury view of the house. You should not assume that any of the furniture in the house or garage is the same as it was five to eight years ago, during the time period at issue in this case." Through this instruction, Defendant sought to minimize the impact that a bed, positioned in the garage at the time of the viewing, might have had on the jurors.

{58} Defendant's proposed instruction appears to be unique. The only legal basis advanced in its support is the use note prefacing the uniform jury instructions, which provides that the courts may give brief, impartial instructions for matters not otherwise specifically covered. We believe this is so generalized as to be unhelpful.

{59} By and large, jury instructions describe principles of law, such as the elements of offenses, burdens of proof, and presumptions for the benefit of the jury. Guidance is also provided with respect to other matters relating to the jury's performance of its duties, such as providing parameters for the deliberative process itself. These generalizations illustrate the novelty of Defendant's proposed instruction. Unlike the more common forms of jury instructions, Defendant's proposed instruction is addressed to the evaluation of specific evidence. Such argument concerning the weight or inferences to be drawn from the evidence is to be presented at trial. Usually, this is most appropriately and effectively accomplished in the course of opening and/or closing state-

ments. We note that the district court took this approach below, suggesting that Defendant advance his argument concerning the positioning of the furnishings in his closing statement. Because jury instructions are not intended to provide an additional platform for the parties to present evidentiary arguments, and because Defendant was provided the opportunity to present the matter to the jury in his closing statement, we perceive no error.

## III. CONCLUSION

{60} For the foregoing reasons, we reject Defendant's assertions of error, both individually and cumulatively. *See generally State v. Fry*, 2006–NMSC–001, ¶ 57, 138 N.M. 700, 126 P.3d 516 (observing that where no error has been established, there is no basis for a claim of cumulative error). Defendant's convictions are therefore affirmed.

{61} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL E. VIGIL, Judges.