**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 27,008**

**STEPHANIE OSBORNE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Defendant was convicted of negligently permitting child abuse stemming from an incident in which her live-in boyfriend applied duct tape to her son, R.O., and left him tied up for nearly an hour. At trial, Defendant sought to introduce evidence that R.O. had gotten into trouble on numerous occasions and that he therefore had a motivation to lie so that he would be removed from his mother's home and sent to live

with his aunt and uncle. The district court excluded this evidence. On appeal, Defendant argues that the district court erred by excluding this evidence and by refusing to grant a mistrial when the prosecutor commented on Defendant's inability to show that R.O. had any motive to lie during closing arguments. For the following reasons, we affirm the district court.

**BACKGROUND**

This case arose from an incident of child abuse perpetrated against R.O. by Defendant's boyfriend. In September 2005, Defendant's boyfriend applied duct tape to R.O. at their home in Doña Ana County. According to R.O., he had been grounded for some trouble he had at school and he was not supposed to leave his room. After disregarding his punishment and leaving his room on four separate occasions, R.O. testified that his mother's boyfriend came into R.O.'s room and applied duct tape to R.O.'s hands, ankles, wrists, eyes and mouth. According to R.O., he was unable to free himself for approximately fifty minutes and lay on the floor trying to free himself and get up. After the thirty to fifty-minute period had passed, the boyfriend returned to the room and removed the duct tape from R.O.'s eyes. R.O. was then able to hop out to the kitchen, where he saw his mother making coffee. According to R.O., he was crying at the time and tried to communicate with his mother to help him get free

but she simply looked at him and walked away. R.O. was eventually able to free himself and then proceeded to clean tape residue from his body.

According to Defendant's testimony and that of her boyfriend, R.O. was not being punished. Instead, there was testimony that R.O. frequently liked to play a game in which he would ask to be tied up in order to see how long it took him to get free. According to Defendant, on the day in question, R.O. was bound only at his wrists and he was not distressed or upset by the incident. Defendant's story is consistent with a version of the events that R.O. told to his biological father on the day of the incident. However, after R.O. spoke to his father and the deputy, R.O. spoke to Officer Chavez, whom he informed that he had been tied up as punishment and in the manner he described at trial.

Prior to the trial, the State filed a motion in limine to exclude evidence of specific incidents of R.O.'s misconduct that led to his being grounded. According to Defendant, the evidence was admissible because it tended to show that R.O. had a motivation to lie because he frequently got into trouble, he did not like the punishment he received at home, and he wanted to be removed from his home so he could live at his aunt's house where he would not be punished as harshly. The court granted the State's motion, ruling that evidence of specific instances of misconduct were inadmissible, but it allowed Defendant to introduce evidence that R.O. was a difficult

child who was routinely disciplined. The court also ruled that the defense could question R.O. about any motivation he had to lie. The court informed Defendant that it would reconsider its ruling during trial if Defendant so requested. Defendant never asked the court to reconsider its motion, nor did Defendant directly ask R.O. about any motivation he may have had to lie. Following her conviction, Defendant filed this appeal.

**DISCUSSION**

**Evidence of Victim's Prior Bad Acts is Inadmissible**

The specific bad acts that Defendant sought to introduce consisted of testimony that R.O. had brought a knife to school, had tried to burn his house down, had broken a neighbor's windows, had verbally abused his teachers, had gotten into fights at school, and was generally a troubled child. Defendant argues that the district court abused its discretion in ruling that this evidence was inadmissible and that this error prevented Defendant from presenting her defense to the jury and denied her the right to a fair trial.

As a general rule, the "[a]dmission of evidence is entrusted to the discretion of the [district] court, and rulings of the [district] judge will not be disturbed absent a clear abuse of discretion." *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). With respect to the admission of evidence of prior bad acts of the victim of

a crime, "an abuse of discretion may be found only if the exclusion of the evidence precluded the criminal defendant from proving an element of his defense." *State v. Baca*, 114 N.M. 668, 672, 845 P.2d 762, 766 (1992).

Defendant argues that evidence of R.O.'s prior bad acts was admissible under Rule 11-404(B) NMRA, which provides that while "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith," such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Defendant argues that R.O.'s prior bad acts fall within the motive exception to Rule 11-404(B) because the bad acts show that R.O. had a motive to lie about what had happened so that he could be removed from his home. Defendant's reliance on this rule is misplaced.

The motive exception in Rule 11-404(B) is intended to allow evidence of *a defendant's* prior bad acts to be admitted to show that the defendant had a motive to commit a crime, not, as Defendant argues, to show that a witness has a motive to lie. *See State v. Allen*, 2000-NMSC-002, ¶ 41, 128 N.M. 482, 994 P.2d 728 (filed 1999) (holding that evidence of a defendants prior bad acts was admissible because it showed that he had a motive to murder his victim so that she could not report the crime). Where, as here, the motive to be shown is a motive to lie, not a motive to

commit a crime, Rule 11-404(B) is inapplicable. The evidence is being used to attack the credibility of the witness and is therefore governed by Rule 11-608 NMRA. *State v. Lovato*, 91 N.M. 712, 715, 580 P.2d 138, 141 (Ct. App. 1978) (noting that "evidence of character and conduct attacking the credibility of [a] witness" is governed by Rule 11-608, not Rule 11-404).

Rule 11-608 specifically precludes the admission of extrinsic evidence for the purpose of attacking or supporting a witness's character for untruthfulness. Rule 11-608(B). Specific instances of conduct may be inquired into on cross examination if the conduct concerns the witness's character for truthfulness, but extrinsic evidence cannot be brought in to prove the conduct. *Id.* Thus, under Rule 11-608, Defendant could have inquired about R.O.'s prior bad acts during R.O.'s cross examination, but only if the bad acts reflected on R.O.'s character for truthfulness or untruthfulness. *Id.*

The evidence that R.O. had attempted to burn his house down, had taken a knife to school, had broken windows, and had fought with classmates and teachers did not have any direct bearing on his character for truthfulness. None of the bad acts Defendant sought to introduce involved dishonesty, and thus they do not fall within the scope of Rule 11-608(B). *See State v. Miller*, 92 N.M. 520, 522, 590 P.2d 1175, 1177 (1979) (holding that evidence that the defendant had hired a person to kill

6

someone did not concern the defendant's character for truthfulness and did not fall within the scope of Rule 11-608, but that questions concerning buying stolen property, selling illegal drugs, and failing to account for the proceeds of a sale did have a bearing on credibility since they were crimes of dishonesty). Thus, Defendant could not properly inquire about R.O.'s bad acts during cross examination because they had no bearing on his character for truthfulness.

While it is clear that the evidence of R.O.'s prior bad acts was inadmissible under Rules 11-404 and 11-608, Defendant argues that the evidence was admissible because it showed that he had a motivation to lie, which is a form of bias. To reach this conclusion, Defendant argues that evidence of R.O.'s specific bad acts would have allowed Defendant to show that R.O. disliked the punishment he received from his mother for the bad acts and was not punished by his aunt for the same conduct. According to Defendant, this would have shown that R.O. lied about the duct tape incident so that he could be removed from his mother's home and placed with his aunt. Thus, Defendant argues, the evidence of R.O.'s bad acts would have showed that R.O. had a motivation to fabricate his story and would have impeached R.O.'s testimony by showing that he was a biased witness. Defendant argues that the district court's exclusion that the evidence precluded her from presenting this defense and "prevented the jury from doing its job." We disagree.

7

Generally, a witness can be impeached by extrinsic evidence showing that a witness may have a bias, and evidence of prior bad acts could conceivably demonstrate that a witness has a bias or a motivation to lie. *See State v. White*, 58 N.M. 324, 333, 270 P.2d 727, 733 (1954) (noting that evidence showing bias or interest is never excluded on the ground of being collateral). Evidence of R.O.'s prior bad conduct, however, did not in and of itself demonstrate bias.

Furthermore, the district court's ruling did not preclude Defendant from putting forth the defense that R.O. had a motive to lie because he preferred to live with his aunt and uncle. In fact, when the district court ruled that evidence of R.O.'s specific conduct was inadmissible, the district court advised Defendant's counsel that "[y]our client may present evidence that the child was a difficult child . . . that they routinely disciplined him by placing him in his room," and that "he didn't like it and didn't react to it well." With respect to the issue of R.O.'s having fabricated his story, the court advised counsel that "you certainly may ask the child if he fabricated it, and if he did so to live with the" aunt and uncle and that "you could ask if [R.O.] is in any way continuing a false story because he likes it at his aunt and uncle's." Finally, the court, referring to the alleged fabrication of the story, advised that "[w]hen we get to that point in time, if you want to approach the bench and ask me to reconsider in light of what we've heard from the witness stand, I'll certainly reconsider it."

Thus, while the court ruled that R.O.'s prior bad acts were inadmissible, the court did not preclude Defendant from asserting that R.O. had fabricated the duct tape story because he preferred to live with his aunt and uncle. In fact, the court left Defendant with wide latitude to elicit testimony from R.O. that he had fabricated the story so that he could live with his aunt and uncle because he disliked the way his mother punished him. While the court precluded Defendant from eliciting the specific bad acts that had resulted in R.O.'s punishments, the court did not prevent Defendant from asking R.O. if he had been punished frequently, how he felt about the punishments, and if he wanted to live with his aunt and uncle to avoid being punished. That Defendant's counsel did not take the opportunity to question R.O. about his motivation to lie is not an error of the court and is not grounds for reversal. Because evidence of prior bad acts is inadmissible under Rules 11-404 and 11-608, and because the district court's ruling did not preclude Defendant from presenting her defense to the jury, we cannot conclude that the district court abused its discretion in excluding the evidence of R.O.'s misconduct.

**Prosecutorial Misconduct**

Defendant next argues that the district court abused its discretion by refusing to declare a mistrial when the prosecutor commented on Defendant's failure to show that R.O. had any motive to fabricate his story. During closing arguments, the

prosecutor argued on three occasions that there was no motive for R.O. to lie. First, the prosecutor noted that "[f]or some crazy unknown reason, this 11-year-old boy . . . started telling a lie. . . . Why he ended up turning on them in the first place, nobody knows." Next, the prosecutor started to argue that "[a]s for motive for [R.O.]—again, what's [R.O.'s] motive to turn on his—" before being cut off by an objection and motion for mistrial from the defense. Finally, after the court overruled Defendant's objection, the prosecutor argued that "nobody is offering a motive for why [R.O.], in the first place, changed his story and started saying, Hey, this is what really happened." Defendant argues that these comments amount to prosecutorial misconduct and warrant a new trial. We disagree.

We review the denial of a motion for mistrial based on prosecutorial misconduct for an abuse of discretion. *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. The district court abuses its discretion in denying a motion for mistrial "when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983), *abrogated by State v. Ruiz*, 2007-NMCA-014, 141 N.M. 53, 150 P.3d 1003.

Generally, a prosecutor has wide latitude during closing arguments, *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254, and may comment on the

evidence and discuss inferences that can be drawn from the evidence. *State v. Hernandez*, 104 N.M. 268, 275, 720 P.2d 303, 310 (Ct. App. 1986). Despite this wide latitude, the prosecution engages in misconduct when it makes improper comments that have "such a persuasive and prejudicial effect on the jury's verdict that the defendant [is] deprived of a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807. In order to be deemed proper, the prosecution's comments "must be based upon the evidence or be in response to the defendant's argument." *Smith*, 2001-NMSC-004, ¶ 38.

In order for us to determine whether prosecutorial misconduct requires a new trial, there must first actually be prosecutorial misconduct. *See Duffy*, 1998-NMSC-014, ¶ 46 (noting that determination of the issue "rests on whether the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial"). Defendant argues that the prosecution was prohibited from first preventing Defendant's presentation of her defense to the jury and then commenting on Defendant's lack of a defense. As discussed above, however, Defendant was not prevented from presenting her defense to the jury; she was prevented only from presenting certain inadmissible evidence to the jury regarding R.O.'s bad conduct. Defendant was free to attempt to show that R.O. had a motivation to fabricate his story. Defendant chose not to attempt to elicit such

testimony from R.O. and instead chose to argue, during closing argument, that R.O. had fabricated his story. Had the prosecution commented on Defendant's failure to show what R.O. had been punished for, then we would be presented with an entirely different question. However, where, as here, the prosecution did not refer to any of the excluded evidence, the prosecution did not make any improper statements. In addition, throughout the trial, Defendant had attacked the credibility of R.O. and had suggested to the jury that R.O. had fabricated his story. By commenting during closing on the dearth of evidence suggesting a motive to fabricate, the prosecutor was properly commenting on arguments Defendant had made and commenting on the evidence introduced at trial. Because the prosecution did not make any improper remarks during closing, we cannot conclude that the prosecution engaged in prosecutorial misconduct.

Because there was no prosecutorial misconduct in this case, the district court did not err in denying Defendant's request for a mistrial.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**TIMOTHY L. GARCIA, Judge**