This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.                                                          No. 34,234

NORA HUERTA,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Judith K. Nakamura, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

MEMORANDUM OPINION

GARCIA, Judge.

{1}    Defendant Nora Huerta (Defendant) appeals following her jury trial convictions for aggravated battery against a household member with a deadly weapon and criminal damage to property. *See* NMSA 1978, §30-3-16 (2008); NMSA 1978, 30-3-18 (2009). Defendant raises two issues on appeal: (1) whether the district court erred in denying her requested self-defense instruction as an affirmative defense to criminal damage to property and (2) whether the district court erred when it did not *sua sponte* instruct the jury on duress as a defense to criminal damage to property. We affirm.

## I. BACKGROUND

{2}    Defendant was charged with aggravated battery against a household member, aggravated assault against a household member, and criminal damage to property based on an incident involving her ex-boyfriend, Vidal Armenta (Armenta). The incident began when Defendant confronted Armenta at a motel, where he was staying with his girlfriend, Vivian Garcia (Garcia). The parties dispute the subject of the confrontation but agree Defendant drove up and parked directly behind Armenta's car while Armenta was in the driver's seat and Garcia was in the passenger seat. Defendant testified that after she first arrived, Armenta threw rocks at her, hitting her head and vehicle. A verbal altercation ensued, at the start of which Defendant was seated inside her vehicle and Armenta was standing outside the vehicle and holding

2

the door shut to prevent Defendant from exiting. Defendant was eventually able to exit the vehicle and picked up a wooden ax handle she testified fell from her vehicle. Armenta testified he feared Defendant would strike him with the handle, and as he grabbed Defendant's arm holding the handle, he looked down and noticed a knife being withdrawn from his thigh. Defendant denied stabbing Armenta and theorized Armenta stabbed himself. Armenta went into his motel room and stayed inside for a brief time before coming back out. During the time Armenta was in the motel room, Defendant used a knife to slash Armenta's tire. The parties disagree whether the knife Defendant used to slash the tire was the one that stabbed Defendant. Defendant then got back into her vehicle and left. Garcia was able to see and hear much of the incident from her position in the passenger seat. Garcia testified Armenta appeared to be defending himself against Defendant, and Garcia heard the noise of air leaving a tire while Defendant was behind the car. Garcia became aware of the fact that Armenta had been stabbed, but was unsure whether she saw him bleeding when she went back into the motel room or only saw the bleeding after Armenta told her what happened when she returned to the motel room. Defendant testified at trial regarding past violence between herself and Armenta, that she believed Armenta was high on methamphetamine at the time of the incident, and that Armenta knew Defendant was

3

staying at her aunt's house at the time. Defendant went on to testify, based on past violence against her by Armenta, that she was afraid of Armenta and slashed his tire to prevent him from pursuing her.

**{3}** Defendant sought self-defense instructions for each of the three charges, but the district court denied a self-defense instruction for the criminal damage to property charge on the ground that it was not a valid defense to criminal damage to property. The jury convicted Defendant of aggravated battery against a household member with a deadly weapon and criminal damage to property. This appeal follows.

## II. DISCUSSION

**{4}** We begin with the standard of review. "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted).

**A.      Self-Defense**

**{5}** As we noted above, the district court denied Defendant's proposed instruction

4

on the ground that self-defense is not an available defense to criminal damage to property. In reaching this conclusion, the district court reviewed the annotations to UJI 14-5181 NMRA ([s]elf defense; nondeadly force by defendant) and UJI 14-1501 NMRA ([c]riminal damage to property) and relied on the lack of any cases providing for self-defense as a valid defense to criminal damage to property.

{6}      Whether our law permits a defendant to raise self-defense as an affirmative defense to criminal damage to property is a novel issue in New Mexico. Other jurisdictions have addressed whether self-defense can provide an affirmative defense to crimes that are not against a person, however, as discussed in more detail below, we need not decide the issue based on the present facts. *See Boget v. State*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002) (holding that self-defense is available in a prosecution for criminal mischief where the mischief arises out of the accused's use of force against another); *State v. Arth*, 87 P.3d 1206, 1209 (Wash. Ct. App. 2004) (holding that self-defense may be available to a person charged with malicious mischief when the damage arises out of the accused's use of force against another); *D.M.L. v. State*, 976 So.2d 670, 673 (Fla. Dist. Ct. App. 2008) (holding the district court erred in excluding evidence of self-defense, because Florida courts had previously held self-defense is available to defend against a charge of criminal mischief); *People v.*

5

*McLennon*, 957 N.E.2d 1241, 1246 (Ill. App. Ct. 2011) (holding there is no self-defense to criminal damage to property, because criminal damage to property is not based on behavior involving directing force against another).

{7}     Defendant asserts that nothing in the jury instruction or caselaw specifies a defendant's defensive action must be directed at a person. Defendant also argues disallowing self-defense as an affirmative defense to criminal damage to property creates an incentive for violence, because a person in Defendant's position would have to physically confront Armenta personally to claim self-defense. Nonetheless, beyond her bare assertions, Defendant does not argue that our caselaw affirmatively recognizes self-defense as a defense to criminal damage to property or that our law should be expanded to afford such a defense. She also cites no caselaw in support of such an expansion. Instead, Defendant's argument focuses largely on the evidence that, in her view, supports a self-defense instruction. However, as we discuss in more detail below, the facts in this case were not sufficient to support an instruction on self-defense. Even if we assume without deciding that New Mexico law would allow the defense of self-defense to a charge of criminal damage to property, we would still

6

affirm the district court's refusal to give the instruction in this case.[1]

{8}     We note that self-defense to criminal damage to property would have required the following proof:

> 1.     There was an appearance of immediate danger of bodily harm to [D]efendant as a result of [Defendant's] concern . . . Armenta would pursue her in his vehicle after she left[;] and
>
> 2.     [D]efendant was in fact put in fear of immediate bodily harm and slashed [Armenta's] tire . . . because of that fear; and
>
> 3.     [D]efendant used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and
>
> 4.     The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.
>
> . . . .
>
> The burden is on the [S]tate to prove beyond a reasonable doubt that [D]efendant did not act in self[-]defense. If you have a reasonable doubt as to whether [D]efendant acted in self[-]defense, you must find [D]efendant not guilty.

---

[1]It does not appear the district court denied the instruction because it was not supported by the evidence. However, as a general rule, we will uphold the decision of a district court if it is right for any reason. *State v. Ruiz*, 2007-NMCA-014, ¶ 38, 141 N.M. 53, 150 P.3d 1003. While a decision of the district court will be upheld if it is right for any reason, we will not rely on this doctrine if doing so would be unfair to the appellant. *State v. Gomez*, 2003-NMSC-012, ¶ 7, 133 N.M. 763, 70 P.3d 753. In this case, it is not unfair to apply the right-for-any-reason doctrine, because Defendant had an opportunity to fully develop the facts below, and Defendant's briefs focus mainly on facts she believes support the giving of a self-defense instruction.

*See* UJI 14-5181 NMRA. The first use note to UJI 14-5181 states the instruction is "[f]or use in nonhomicide cases when the self[-]defense theory is based upon: necessary defense of self against any unlawful action; reasonable grounds to believe a design exists to commit an unlawful act; or reasonable grounds to believe a design exists to do some bodily harm." *Id*. Use Note 1. The use note to the second element instructs the district court to "[d]escribe [the] unlawful act which would result in some bodily harm as established by the evidence. Give at least enough detail to put the act in the context of the evidence." *Id*. Use Note 2. The second use note refers to the unlawful conduct of the victim that led the defendant to act in self-defense. This is evidenced by the third use note, which instructs the district court to describe the defendant's actions in the second element of the instruction. *See id*. Use Note 3. Thus, to claim self-defense, Defendant would have to point to sufficient facts demonstrating either (a) Armenta acted unlawfully, or (b) Defendant had reasonable grounds to believe Armenta had designs to commit an unlawful act or do Defendant bodily harm, and also that a reasonable person would have slashed Armenta's tire to prevent Armenta from committing the unlawful act or effectuating the bodily harm. *See* UJI 14-5181.

**{9}** Defendant argues she was entitled to the self-defense instruction, because the

evidence shows it was necessary for her to slash the tire to prevent Armenta from pursuing her. While Defendant asserts Armenta threw rocks at her when she first arrived at the motel, Defendant does not argue that Armenta, in fact, tried to commit an unlawful act immediately preceding or concurrent with her act of slashing the tire. Instead, Defendant presented evidence about past violence in her relationship as the basis for her belief that Armenta had designs to commit some unlawful act or to do Defendant bodily harm. Defendant's argument hypothesizes Armenta was going to pursue her to her aunt's house, but Defendant does not cite to any evidence of Armenta's intention to pursue her either before, at the time, or after she slashed his tire. *See State v. Elliott*, 1977-NMSC-002, ¶ 10, 89 N.M. 756, 557 P.2d 1105 ("[Our appellate courts] will not speculate about hypothetical evidence that might have been developed at the defendant's trial."). Moreover, Defendant does not point to any evidence that she was in immediate danger. *See id.* (noting that speculation about the evidence is not allowed). Defendant slashed Armenta's tire only after he had retreated to his motel room and stayed there. Finally, it is not reasonable that a person in these circumstances would slash Armenta's tire. Defendant was free to leave the scene and there was no indication of threatening or confrontational activity once Armenta returned to the motel room. In fact, Defendant did immediately leave in her vehicle

after the tire slashing. Thus, Defendant has not shown that the act of slashing the tire was connected to a particular or imminent action or threat by Armenta or that Defendant's action was reasonably necessary to escape the scene of the confrontation. *See State v. Nozie*, 2007-NMCA-131, ¶ 14, 142 N.M. 626, 168 P.3d 756 (affirming the denial of a self-defense instruction where "no reasonable jury could [find] on the evidence before it that . . . there was an appearance of immediate danger of bodily harm, . . . the force used by [the d]efendant was reasonable and necessary, or that a reasonable person in the same circumstances would have acted as [the d]efendant did" (internal quotation marks and citation omitted)).

{10}     Even if New Mexico recognizes self-defense as a defense to criminal damage to property, which we do not decide today, the evidence in the present case did not support giving the instruction. We therefore conclude the district court did not err when it denied Defendant's proposed self-defense instruction as to the charge of criminal damage to property.

**B.     Duress**

{11}     Defendant next argues the district court erred when it did not *sua sponte* give a duress jury instruction as a defense to criminal damage to property. Because Defendant did not tender a duress instruction, we review for fundamental error. *See*

10

*Benally*, 2001-NMSC-033, ¶ 12 (stating, where an error has not been preserved, we review for fundamental error); *State v. Haskins*, 2008-NMCA-086, ¶ 26, 144 N.M. 287, 186 P.3d 916 ("[T]he fundamental error doctrine is applied to review unpreserved error when the court's conscience is shocked at a miscarriage of justice, such as when a defendant is indisputably innocent or when a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." (internal quotation marks and citation omitted)).

{12}     A duress defense to criminal damage to property would have required the following proof:

> Evidence has been presented that [D]efendant was forced to [slash Armenta's tire] under threats. If [D]efendant feared immediate great bodily harm to [herself] or another person if [s]he did not commit the crime and if a reasonable person would have acted in the same way under the circumstances, you must find [D]efendant not guilty.
>
> The burden is on the [S]tate to prove beyond a reasonable doubt that [D]efendant did not act under such reasonable fear.

*See* UJI 14-5130 NMRA. As discussed above, Defendant slashed Armenta's tire after Armenta had left the scene and was inside the motel room. While Defendant testified to Armenta's past violence against her and her fear Armenta would pursue her to her aunt's house, no facts support Defendant's belief she was under threat of being pursued or that she was at risk of suffering immediate great bodily harm. We

11

acknowledge Defendant's testimony regarding Armenta's past violence, but "[f]ear of immediate harm must be viewed together with whether a reasonable person in the defendant's position would have acted the same way under the circumstances. That latter element implicitly presumes that a reasonable person would not violate the law if legal alternatives are available." *State v. Castrillo*, 1991-NMSC-096, ¶ 15, 112 N.M. 766, 819 P.2d 1324. As we noted above, Defendant had a legal alternative to slashing Armenta's tire—getting in her vehicle and driving away, something she immediately did afterward. Thus, Defendant's choice to illegally slash Armenta's tire was not forced upon her or based upon any existing threat of harm by Armenta.

{13}    As with Defendant's argument for a self-defense instruction, her argument for a duress instructions fails because there was no evidence Defendant was threatened, the threat was of great bodily harm, the harm was imminent, or Defendant acted reasonably in slashing Armenta's tire. We therefore conclude Defendant was not entitled to a duress instruction based on the evidence presented, and the district court did not commit fundamental error by failing to *sua sponte* instruct the jury on a defense of duress.

{14}    Accordingly, we affirm.

{15}    **IT IS SO ORDERED.**

                                      _____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**

_____

**STEPHEN G. FRENCH, Judge**