THE STATE OF OHIO, APPELLEE, *v.* LIPKER, APPELLANT.

[Cite as State v. Lipker, 16 Ohio App. 2d 21.]

(No. 1068—Decided July 24, 1968.)

*Mr. Dennis J. Callahan, Jr.,* prosecuting attorney, for appellee.

*Mr. Lloyd W. Burwell,* for appellant.

GRAY, J. This cause is in this court on appeal on questions of law from a judgment finding defendant guilty of the offense of taking indecent and improper liberties with a female person under the age of sixteen years, to wit, of the age of three and one-half years, without committing or intending to commit the crime of rape upon such child.

After conviction upon such charge, defendant, feeling aggrieved thereby, filed his notice of appeal and the following assignments of errors:

1. The court erred in failing to sustain defendant's motion to suppress.

2. The court erred in failing to exclude all evidence under the exclusionary rule.

3. The arrest and detention of the defendant was illegal.

4. The defendant was denied his statutory and constitutional rights to communicate with counsel or relative.

5. Violation of the defendant's statutory and constitutional rights prior to demonstration and prior to seizure of defendant's shorts.

6. The court erred in admitting into evidence, hearsay and prejudicial evidence, which testimony denied the defendant a fair trial.

7. The court erred in overruling motions and objections by attorney for defendant and denied defendant a fair trial.

8. The court erred in its general charge to the jury.

9. Other errors appearing upon the record.

The record shows that on November 12, 1965, defendant, a man forty-four years of age, was working as a plumber in the home of the parents of a child then three and one-half years of age. The little girl was looking for some clothes in her bureau when her mother asked her what she was doing. The child was crying and distraught. She wanted clean clothes and said that the workman had peed in her panties.

The child's clothing was examined as were the shorts of defendant. The results of the test were that human semen and spermatozoa were found on the child's panties

and defendant's shorts. The evidence shows that there was a dry white substance on her legs.

The mother of the child called the police. Captain George Haas and Sergeant Butler came to the home and found defendant in the basement working.

One version of what was said and of what happened is that Captain Haas asked defendant if he did something to the girl. Defendant said yes, mumbled something else, and turned away. The Captain placed him under arrest.

Another version is that defendant said he was talking to the little girl. He pulled up her dress and put his penis in between her legs.

Both defendant and police agree that nothing further was said until they arrived at the police station. Chief Markel testified that he advised defendant of his constitutional rights.

Defendant testified on hearing on motion to suppress evidence that he was real shook up; that not to his recollection was he told that he had a constitutional right to remain silent; that he could not recall that he was told that anything he would say would be used against him; that nothing was said about his having an attorney; and that he was not advised that he might call a relative.

A confession was secured from defendant, and he demonstrated to the officers how he put his penis between the legs of the little girl.

A motion was filed to suppress the statements made by defendant to the arresting officers on the basis of the holding of *Miranda* v. *Arizona*, 384 U. S. 436. Various objections were taken to the rulings of the court in regard to the statements defendant made to the police officers, which have become the basis for the following assignments of error.

Assignments of error Nos. 1, 2, 4 and 5 will be considered together.

There is testimony that the Chief of Police at the time defendant entered his office told defendant that he had the right to an attorney, that he had the right to remain silent, and that he could contact an attorney if he so desired. De-

fendant was also told that anything he said might be used against him. There is evidence that defendant said he did not want an attorney. There is further evidence that he was told that if he did not have funds an attorney would be appointed for him.

Defendant testified that he was questioned half an hour to forty-five minutes, that police were courteous to him and that they did not threaten him or use violence.

There are two separate areas to be concerned about. The first concerns the events occurring in the basement before the arrest of defendant.

The Supreme Court of the United States in *Miranda* v. *Arizona,* 384 U. S. 436, stated that the warnings to ensure defendant's constitutional rights must be given before in-custody interrogation. The court defined in-custody interrogation as follows:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

Defendant was asked one simple question in the basement of the home. He was not in custody. He was there as a workman. He was there by his own choice. We feel that under the circumstances the rules enunciated in *Miranda* were not breached in this instance.

The other area of investigation relates to the occurrence at the police office.

This matter was fully developed upon the preliminary hearing on the motion to suppress. The evidence is in conflict.

There was substantial credible evidence that defendant talked voluntarily about the events that brought about his arrest and trial.

Judge O'Neill speaking for the court in *State* v. *Perry,* 14 Ohio St. 2d 256, 261 said:

" '* * * Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. * * *' "

See *People* v. *Anonymous,* 21 N. Y. 2d 1, 286 N. Y. S. 2d 225; *Piqua* v. *Hinger,* 15 Ohio St. 2d 110.

Therefore, these assignments of error are overruled.

Assignment of error No. 3 alleges that the arrest and detention of defendant was illegal. He was arrested on the afternoon of November 12, 1965. The affidavit charging the offense was sworn to on November 13, 1965, which was a Saturday. He was arraigned the following Monday, November 15, 1965, at which time he pleaded not guilty and was released on bond.

It is agreed by all witnesses that there were no threats, no promises, no force, no brutal treatment, no abusive language employed. The defendant, in fact, testified that the police officers were courteous.

By the testimony of defendant himself, he was interrogated from one-half hour to forty-five minutes.

*Dowell* v. *Maxwell, Warden,* 174 Ohio St. 289, at page 290, says:

"* * * Any defect or irregularity in either the arrest or preliminary examination does not affect the validity of the accused's conviction. * * *"

Assignment of error No. 3 is overruled.

Assignment of error No. 6 alleges that the court erred in admitting into evidence hearsay and prejudicial evidence, which testimony denied the defendant a fair trial.

In the first branch of this assignment defendant claims he was prejudiced by the inflammatory statements of the prosecuting attorney in his opening statement to the jury. *Bruno* v. *State,* 15 Ohio Law Abs. 693, 695, says:

"A statement made by counsel of the evidence that he expects to introduce is not reversible error unless it appears that counsel made the statement in bad faith, even if it turned out that such evidence was incompetent."

See *Wray* v. *State,* 5 C. C. (N. S.) 437, 27 C. C. 1; 15 Ohio Jurisprudence 2d 699, 700, Section 535.

We have read and reread the opening statement of the prosecution and can find nothing objectionable in it. Defendant took four objections to the opening statement of

the prosecution. All the points of law raised by these objections have been raised by other assignments of error concerning the admission of evidence.

The claimed objectionable evidence is set forth as follows:

"Q. Now, Mrs. * * *, did you notice anything unusual about your daughter that afternoon? A. Yes.

"Q. Would you tell us when you first notices [sic] something unusual about her and what it was?

"Mr. Burwell: Objection.

"The Court: Overruled. You may answer.

"A. I was upstairs and she was downstairs and she came up and she was in her room rummaging through her drawer. I went to see what she was doing and she said—

"Mr. Burwell: Objection. I object to what she said.

"The Court: Overruled.

"Mr. Burwell: This is strictly hearsay from a child three years of age and that will prejudice this defendant.

"The Court: That is true but of course the little girl could testify and I am going to allow this.

"Mr. Burwell: Exceptions. This is prejudicial to my defendant.

"Q. Well, she was talking to her daughter. A. Well, I went in and she was whimpering and I asked what was the matter and she said that she was going to get some dry panties. I said, why, are your panties wet. She said her panties were wet. I said, * * *, what happened and she was sobbing and she told me that a man peed in her panties. Those were her words.

"* * *

"A. Yes, I laid her on the bed and looked at her clothing.

"Q. What did you see? A. There was a white milky substance on her panties and on her legs and on the body.

"Q. Are you speaking about the private parts of the body? A. Yes."

Tests conducted on the child's clothing revealed the presence of human semen and human spermatozoa.

The statement of the little girl given to her mother

was a verbal act and does not come under the ban of the hearsay rule.

In VI Wigmore on Evidence (Third Ed.), Section 1772, the author cites four simple limitations which attend the use of utterances as verbal acts:

(1) The conduct to be characterized by the words must be *independently material to the issue.*

(2) The conduct must be *equivocal.*

(3) The words must aid in *giving legal significance to the conduct.*

(4) The words must *accompany the conduct.*

The act of getting clean clothes was material to the issue. The act of getting clean clothes was equivocal. The words explained and gave legal significance to the conduct of the child. The words accompanied the conduct of the child.

The author states that under these circumstances the hearsay rule interposes no objection to the use of such utterances.

The child did not testify. Such testimony has been admitted before in similar circumstances. This was not error. *State* v. *Lasecki*, 90 Ohio St. 10, is the case in which the court admitted the statement of a boy four years of age, who exclaimed, "the bums killed pa with a broomstick." We wish to cite a selected portion of this opinion.

On page 27 the court said:

"* * * The exclamation of the boy under the circumstances, that it was made in its relation to the transaction, being the sole eyewitness save and except the defendant, speaking under great excitement and impulse, freed from opportunity or occasion to dissemble or fabricate—all these things undoubtedly gave the boy's exclamation great weight with the court and jury. But the primary reason for such great weight was by reason of its causal connection, its logical relation to the facts in the case, and because it was the natural language of the whole situation speaking through the little boy. That relation made it competent, though it be not strictly contemporaneous."

Assignment of error No. 6 is overruled.

We have examined assignment of error No. 7 and find no error in respect to this assignment.

In assignment of error No. 8, defendant claims that he was prejudiced in that the trial court charged the jury in regards to a confession when the written confession of defendant was never introduced into evidence. We are of the opinion that defendant is mistaken as to the various forms a confession might take.

23 Corpus Juris Secundum, 154, Section 816, says:

"As a general rule, the manner or form in which a confession may be made is immaterial, and a confession may partake of many forms. * * * it may be oral or written in whole or in part; and there is no requirement that an oral confession be reduced to writing * * *. A confession may be made by conduct as well as words, and it may be either express or implied. While a confession as ordinarily understood means an admission of guilt, an admission of facts constituting the offense may constitute a confession. So, a confession may be a naked statement by accused that he is guilty of the crime, or it may be a full statement of the circumstances of its commission, including his part in it. Also, it may be in narrative form, or it may consist of a series of questions and answers. * * *"

Assignment of error No. 8 is, hereby, overruled.

The facts and circumstances developed in this case admit of no other conclusion then the guilt of defendant.

It should be noted that defendant does not claim he is not guilty, nor that the evidence is not sufficient to convict him of the crime with which he is charged under the laws of the state of Ohio. His claim is that he was convicted by means of a confession illegally secured and testimony improperly admitted into evidence, which prejudiced his case before the jury. With this conclusion of defendant we do not agree. We find no error prejudicial to defendant. He is entitled to a fair trial and not a perfect trial. *Lutwak* v. *United States,* 344 U. S. 604.

*Judgment affirmed.*

CARLISLE, P. J., and ABELE, J., concur.