512 P.2d 974

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Thomas I. ARAGON, Defendant-Appellant.**
**No. 1015.**

Court of Appeals of New Mexico.

July 5, 1973.

Leon Taylor, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Ronald Van Amberg, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

HERNANDEZ, Judge.

Defendant was convicted of voluntary manslaughter after a jury trial in Bernalillo County. He appeals his conviction on three grounds: (1) that the trial court erred in admitting a statement by the victim related by a witness as a res gestae exception to the hearsay rule; (2) that the trial court erred in overruling defendant's motion to strike any jury instructions on either first or second degree murder because the evidence did not support any instructions on murder; (3) and that, even if harmless in themselves, these two errors were cumulative and "in the aggregate constituted prejudicial error" to the defendant.

We affirm.

Sometime in the afternoon of July 19, 1971, the defendant drove his car into an Albuquerque service station for some gaso-

line. He parked the car at a self-service pump, apparently to put some gas into the tank and left the car in order to use the service station's restroom facilities. According to the testimony, defendant was somewhat of a regular patron of that service station and was known for buying only small amounts of gasoline and leaving his car parked in such a manner that the gasoline pumps could not be used by other patrons. When he emerged from the restroom, the victim, who was an employee of the service station, approached the defendant and an argument ensued. The victim, in addition to yelling at the defendant, also made an attempt to kick the defendant as the defendant was moving away from the restroom toward his car.

When the defendant reached his car, he leaned into the front seat and pulled out a pistol making various verbal threats to "kill" the victim. The victim then went to the service station office and returned carrying a baseball bat. When the victim moved toward the left front door of the defendant's automobile still carrying the baseball bat, defendant who had apparently been sitting on the driver's side of the car, raised the pistol and shot the victim. The victim fell to the ground and began crawling away from the automobile toward the station office. As he moved toward the office, the defendant got out of his car and fired several more shots into the victim's body. The victim died almost immediately; the defendant left the service station and was apprehended sometime later that same day.

(1) *The hearsay testimony.*

At trial the prosecutor examined an eyewitness to the shooting. The witness testified as follows:

"Q. Did you hear the man [the defendant] say anything to the attendant [the victim]?

"A. When he said at the gas, he said, 'Put that gun down.'

"Q. Who said that?

"A. The attendant.

"Q. Told him to put the gun down?

"A. Yeah.

"Q. Did he say it just once?

"MR. TAYLOR: I'm going to have to object, if the Court please . . .

. . . . .

"MR. JELSO: This is the res gestae of what occurred at the scene.

"THE COURT: I think that it is, also. You may proceed."

The defendant argues that this statement was hearsay and not properly admissible under the res gestae exception to the hearsay rule. The state contends that the testimony properly fits within the res gestae exception, and it appears from the transcript that the trial court admitted the statement as being part of the res gestae. We conclude that the evidence is admissible but that it is not hearsay. We therefore need not undertake an analysis of the res gestae exception.

Hearsay is generally defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801, Proposed Rules of Evidence for the United States Courts. However, all statements of third persons related by witnesses need not be hearsay because they need not be offered to prove the truth of the statement. A statement made may be admitted merely to prove that it was made and not to prove that it is true. Such statements have never been regarded as hearsay but rather have been characterized by the authorities as "verbal acts", and admissible irrespective of any limitations on hearsay testimony. State v. Lipker, 16 Ohio App.2d 21, 241 N.E.2d 171 (1968). See also Isbell v. People, 158 Colo. 126, 405 P.2d 744 (1965). As our Supreme Court pointed out,

"If the fact that a statement was made becomes relevant to an issue in the case, evidence of an out-of-court utterance of the statement is admissible, not for the purpose of proving the truth of the matter stated, but merely for the purpose of establishing the fact that the statement was made."

Glass v. Stratoflex, Inc., 76 N.M. 595, 417 P.2d 201 (1966).

■ Here, the testimony of the eyewitness relating to statements made by the victim were not related to prove the truth of the statements but were admissible as part of his narrative of the altercation between defendant and victim. Just as the physical behavior of both defendant and victim were testified to, the statements that also comprised part of the altercation were similarly admissible, not as hearsay, but as verbal acts. The testimony of the witness on this point was admissible.

(2) *The instructions on first and second degree murder.*

■ The defendant asserts that "the Trial Court's instructions on first and second degree murder were unwarranted by the evidence and as a result confused the jury and deprived the Defendant of a fair trial." However, the trial court was required to instruct the jury as to "every degree of the crime charged when there is evidence in the case tending to sustain such degree." State v. Ulibarri, 67 N.M. 336, 355 P.2d 275 (1960).

The statutory definitions of both first and second degree murder are set out in § 40A–2–1, N.M.S.A.1953 (2d Repl.Vol. 6) and state, in pertinent part:

"A.   Murder in the first degree consists of all murder perpetrated:

(1) by any kind of willful, deliberate and premeditated killing;

.    .    .    .    .    .

"B.   Murder in the second degree consists of all other murder."

■■ The distinction between first and second degree murder has generally been viewed as the difference in the "kind of malice present." Torres v. State, 39 N.M. 191, 43 P.2d 929 (1935). Further, second degree murder is generally considered as murder without deliberation. "Murder in the second degree is murder without deliberation but it is murder with premeditation or with malice aforethought. . . ."

State v. Sanchez, 27 N.M. 62, 196 P. 175 (1921).

■ Given these definitions of first and second degree murder, the sole question before this court is whether the record contains evidence adduced at defendant's trial sufficient to support the two murder instructions. In other words, might the jury reasonably deem defendant's acts in shooting the victim murder in either degree? A brief re-examination of the facts leads inescapably to the conclusion that there is evidence in this record to support both murder instructions. During the course of the argument defendant threatened to kill the victim. The victim left the scene of the argument briefly after defendant pulled the pistol out of his car. The defendant had time to evade further argument and ample time for deliberation while the victim was inside the service station office procuring the baseball bat. He did not leave but instead remained in or near his car until the victim returned. After the victim was shot once by the defendant, a shot which apparently only wounded him, the victim was knocked to the ground and attempted to crawl away from the defendant's automobile. Defendant then got out of his car, and fired several more shots into the victim's body.

Depending on how they interpreted the testimony given at the trial, the jurors could have found that defendant had time to deliberate. They might have found the shooting was done with malice and premeditation or they might have found, as they did, that the shooting was merely voluntary manslaughter. Irrespective of the verdict, however, there was evidence presented which tended to indicate that sufficient time elapsed during which the defendant could have weighed his actions and considered their consequences and that the shooting was not in the heat of argument. Torres v. State, supra.

We conclude that the instructions on first and second degree murder were proper.

(3) *The assertion of cumulative error.*

As his final contention on appeal, defendant asserts that even if the two assignments of error were not sufficient, in and of themselves, to constitute grounds for reversal that the cumulative effect of both errors warrants a reversal. We need not reach this argument since we have concluded that both the admission of the testimony and the giving of the first and second degree murder instructions were proper. We find no reversible error in this case.

Affirmed.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.