[Cite as *State v. Risner*, 2012-Ohio-5954.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  8-12-02

    v.

DOUGLAS L. RISNER, JR.,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. 11-10-0219

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   December 17, 2012**

APPEARANCES:

    *Marc S. Triplett* **for Appellant**

    *William T. Goslee and Eric C. Stewart* **for Appellee**

**SHAW. P.J.**

{¶1} Defendant-Appellant Douglas L. Risner, Jr. ("Risner") appeals the February 10, 2012, judgment of the Logan County Common Pleas Court sentencing him to 48 months in prison after a jury convicted Risner of Robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree, and Tampering with Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree.

{¶2} The facts relevant to this appeal are as follows. On November 8, 2011, Risner was indicted for Robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree, and Tampering with Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. (Doc. 8).

{¶3} On November 16, 2011, Risner was arraigned and pled not guilty to the charges. (Doc. 19).

{¶4} On December 17, 2011, the State filed a Bill of Particulars specifying that Risner was accused of robbing Varsity Drive Thru ("Varsity") in Bellefontaine, Ohio, on October 13, 2011. (Doc. 22). Risner was also accused of discarding the gray sweatshirt and the latex gloves he was purportedly wearing at the time of the robbery. (*Id.*)

{¶5} On December 29, 2011, Risner filed a "notice of alibi" pursuant to Criminal Rule 12.1. (Doc. 40). The alibi alleged that Risner was at Diane Sheer's house at the time of Varsity's robbery. (*Id.*)

{¶6} On January 5-6, 2011, the case proceeded to a jury trial. (Doc. 85-86). At trial, the State first called Courtney Mullins, an attendant who works at Varsity. Mullins testified that after 7 p.m. on the night of October 13, 2011, she was working alone at Varsity. (Jan. 5 Tr. at 63). Mullins testified that after 10 p.m. a woman came into Varsity on foot. (*Id*. at 67). Mullins testified that Varsity does not typically accept walk-ins as a safety precaution. (*Id*.) Mullins testified that Mullins served the customer anyway as the customer said that she had a truck next door at the car wash. (*Id*.) Mullins testified that the woman appeared "antsy" and that the woman followed Mullins around the store, but ultimately left after she bought some cigarettes, a Mountain Dew, and two lighters. (*Id*. at 68). Mullins testified that the woman then exited out of the back of Varsity, which Mullins thought was strange given where the woman had said her truck was. (*Id*. at 67).

{¶7} Shortly after the woman left, Mullins testified, a taller man wearing a gray hooded sweatshirt with the hood up and latex gloves walked into Varsity through the back of the drive-thru, approached Mullins and demanded money. (*Id*. at 70-73). Mullins testified that the man had one gloved hand in his pocket and the other gloved hand was pointed at her in the shape of a gun. (*Id*. at 71, 73). Mullins testified that the man either pushed her or she backed away and ended up "slam[ming]" into the wall. (*Id*. at 71). Mullins testified that the man, who had his hood up and had something covering his mouth, grabbed the money out of the

cash register when Mullins opened it, told Mullins not to call for help, and then left. (*Id.*)

{¶8} Mullins testified that after the man left, Mullins called 9-1-1 and the police arrived. (*Id.* at 75). Mullins described what the man was wearing, adding that the man was about a foot taller than her (she was about 5'1''), that he had gray whiskers and appeared to be in his fifties or sixties. (*Id.* at 72-73, 78). Mullins testified that she was scared at the time of the incident and that she was still scared when she worked at Varsity because of the incident. (*Id.* at 74).

{¶9} The State then called Savannah Grimes, the manager of Varsity. Grimes testified that she reviewed the surveillance video and showed it to the police. (*Id.* at 80-81). Grimes also testified that according to receipts, $424.71 had been taken from Varsity during the robbery. (*Id.* at 83).

{¶10} Next the State called Officer Craig Comstock who arrived on the scene and reviewed the surveillance video. (*Id.* at 86). The State then called Detective Dwight Salyer. Salyer testified that he reviewed the surveillance video and recognized the first female that had entered the store shortly before the robbery as Jackie Whiteaker, having dealt with her previously. (*Id.* at 96). Salyer also testified that from the surveillance video it was possible to see the robber's hand in the shape of a gun. (*Id.* at 97).

{¶11} Salyer testified that the morning after the robbery he spotted Whiteaker driving in Bellefontaine. (*Id*. at 97). Salyer testified that there were two other people in the vehicle Whiteaker was driving and that Whiteaker eventually stopped when a marked patrol vehicle activated its lights to initiate a traffic stop. (*Id*. at 97-98). The people in the car were Jackie Whiteaker, Risner, and Risner's cousin Cliff Risner ("Cliff"). (*Id*.) Detective Salyer testified that Risner matched the description given to him by Mullins. (*Id*. at 99).

{¶12} Detective Salyer testified that in his initial questioning of Jackie, Jackie admitted to going to Varsity the previous night but denied having anything to do with the robbery. (*Id*. at 100). Detective Salyer testified that Cliff had originally stated that the three of them had all been together since Risner got off work the previous day (before the robbery), and Jackie had said they had been together since about 4 a.m. (after the robbery). (*Id*. at 100). Noting the discrepancy in time, Salyer went back to Cliff, and Cliff then told Salyer that Risner informed Cliff that Risner had robbed Varsity and had thrown his sweatshirt and gloves down by the railroad tracks. (*Id*. at 101-02). Salyer went and searched the area indicated by Cliff and found the sweatshirt and gloves, which he sent off for DNA testing. (Tr. at 106, 109). Salyer also testified on re-direct examination that Cliff Risner did not fit the description of the robber. (*Id*. at 121).

{¶13} Jackie Whiteaker then testified at the hearing. Whiteaker testified that she was in jail for pleading guilty to conspiracy to commit robbery of Varsity. (*Id*. at 125). Whiteaker testified that she met up with Risner and Cliff around 4:30 or 5 p.m. on the day of the robbery. (*Id*. at 127). Whiteaker testified that she sold Risner some crack-cocaine and then later in the evening she walked toward Moore's Café with the intention of going in, but received a call for another drug deal and decided not to go into Moore's. (*Id*. at 132). Whiteaker testified that she then went into Varsity on foot and purchased some items. (*Id*.) Whiteaker testified that after she left Varsity she called her friend Diane Sheer to pick her up as it was raining. (*Id*.) Whiteaker testified that Diane Sheer came and picked her up and then they met up with Risner. (*Id*. at 133). Whiteaker testified that she, Risner, Cliff, and Diane went back to Diane's house and smoked more crack-cocaine together and that at the house, Risner informed her that he committed the robbery. (*Id*. at 134).

{¶14} The State next called Cliff Risner. Cliff testified that he met up with Risner after Risner got off work on the day of the robbery and that they went to Whiteaker's. (*Id*. at 149). Cliff testified that he and Risner were smoking crack at Whiteaker's that Risner had purchased. (*Id*. at 150). Cliff testified that he stayed at Whiteaker's when Whiteaker and Risner left and met up with them later when they picked him up to go to Diane Sheer's house. (*Id*. at 151). Cliff testified that

at Diane Sheer's house, Risner told Cliff that Risner robbed Varsity. (*Id*. at 152). Cliff testified that Risner told Cliff that Risner robbed a young girl, not an old lady; that Risner received a couple hundred dollars from the robbery; and that Risner had buried or covered up the gloves and the gray hooded sweatshirt he had been wearing during the robbery. (*Id*. at 152-54). Cliff testified that although Cliff initially told police he did not know anything about the robbery, Cliff changed his story when he realized how serious it was. (*Id*. at 155).

{¶15} The State next called Diane Sheer. Diane testified that Whiteaker called Diane and asked Diane to give Whiteaker a ride around 10:30 p.m. on the night of the robbery. (*Id*. at 166). Diane testified that she picked up Whiteaker and Risner, then later Cliff, and that they all went back to her residence and smoked crack. (*Id*. at 166-75). Diane testified that no one mentioned the robbery to her and that she did not know anything about it. (*Id*. at 175).

{¶16} The State next called Detective Scott Sebring to further establish the chain of custody of the gloves and sweatshirt that were sent for DNA testing. (*Id*. at 178-83). Afterward, the State called Emily Draper with the Ohio Bureau of Criminal Investigation, a DNA Forensic Scientist. Draper testified that the latex gloves submitted to BCI tested consistent with Risner's DNA.[1] (*Id*. at 193).

---

[1] Draper testified regarding Risner's DNA being in the glove that, "[b]ased on the national database provided by the Federal Bureau of Investigation, the expected frequency of occurrence of a partial DNA profile from the second latex glove, Item No. 2, is one in approximately 3.3 trillion unrelated individuals." (Tr. at 193).

Draper testified that there were too many partial sources of DNA on the sweatshirt to tell if it was consistent with Risner, but she could not rule him out. (*Id*. at 194).

{¶17} The State then rested its case. After Risner made a Criminal Rule 29 motion for acquittal which was denied, Risner took the stand. Risner testified that after he did his one day HVAC job on the day of the robbery he gave Cliff some money and Cliff and Whiteaker smoked crack while he hung out with them. (*Id*. at 211). Risner testified that when he left Whiteaker's house, he went to McDonalds and had a couple of double cheeseburgers. (*Id*.) Risner testified that when he went back to Whiteaker's no one was there so he went to Diane's instead. (*Id*.) Risner testified that no one picked him up. (*Id*. at 212). Risner then testified that back at Diane's all the others were using drugs but he was not. (*Id*. at 213). Risner testified that he had worn latex gloves a week or so before the incident when he was putting some flooring tile down for Cliff's girlfriend's daughter. (*Id*. at 216). After Risner finished testifying, the defense rested.

{¶18} Ultimately the jury found Risner guilty both of Robbery and of Tampering with Evidence as charged in the indictment. Rather than proceed immediately to sentencing, the court ordered a pre-sentencing investigation and set sentencing for February 6, 2012.

{¶19} On February 6, 2012, the court held a sentencing hearing. At the sentencing hearing, the court sentenced Risner to 30 months in prison on the

Robbery charge and 18 months in prison on the Tampering with Evidence charge. (Doc. 87). The prison sentences were ordered to be served consecutively for a total of 48 months. (*Id.*)

{¶20} On February 10, 2012, the court memorialized its sentence in a judgment entry. (Doc. 70). It is from this judgment that Risner appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED WHEN IT ADMITTED THOSE PORTIONS OF THE TESTIMONY OF THE STATE'S WITNESSES SALYER, SHEER, COMSTOCK AND SEBRING THAT CONTAINED INADMISSIBLE HEARSAY.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED WHEN IT PERMITTED NUMEROUS WITNESSES TO TESTIFY THAT APPELLANT HAD USED ILLEGAL DRUGS.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE PROSECUTOR TO CROSS-EXAMINE APPELLANT AS TO THE SPECIFICS OF HIS PRIOR FELONY CONVICTION.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED WHEN IT PERMITTED THE PROSECUTOR TO CROSS-EXAMINE APPELLANT AS TO THE REASON THAT HE HAD NOT INFORMED THE ARRESTING OFFICER OF HIS WHEREABOUTS ON THE NIGHT OF THE ROBBERY.**

**ASSIGNMENT OF ERROR 5**
**THE ACTS AND OMISSIONS OF TRIAL COUNSEL DEPRIVED APPELLANT OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.**

**ASSIGNMENT OF ERROR 6**
**THE TRIAL COURT ERRED WHEN IT IMPOSED SANCTIONS IN ITS SENTENCING ENTRY THAT IT HAD NOT IMPOSED IN OPEN COURT AT THE SENTENCING HEARING.**

*First Assignment of Error*

**{¶21}** In Risner's first assignment of error, Risner argues that the trial court erred by allowing a variety of "hearsay" statements at trial to be made which Risner characterizes as inadmissible. Risner argues that individually and cumulatively this evidence prejudiced Risner.

**{¶22}** At the outset we note that the vast majority of the statements claimed to be inadmissible hearsay were not objected to at trial, and therefore, Risner has waived all but plain error on appeal. *State v. Dixon*, 3d Dist. No. 8-02-43, 2003-Ohio-2550, ¶ 21. To find plain error under Crim.R. 52(B), there must be a deviation from a legal rule, the error must be an "obvious" defect in the trial proceedings, and the error must have affected a defendant's "substantial rights." *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is utilized "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *Barnes*, 94 Ohio St.3d at 27.

**{¶23}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802.

{¶24} Risner argues that statements made by State's witnesses Cliff Risner and Jackie Whiteaker were hearsay. Specifically Risner claims that Cliff and Whiteaker's testimony at trial that Risner had confessed to each of them individually were hearsay and should not have been admissible at trial. However, an admission by a party-opponent is not considered hearsay. Evid.R. 801(D)(2). An admission by a party opponent is a statement that "is offered against a party and is (a) his own statement, in either his individual or representative capacity * * *." Evid.R. 801(D)(2). The testimony of Whiteaker and Cliff regarding Risner's confession to the robbery was clearly an admission by a party opponent under the rule and therefore, not hearsay. Thus those statements were not inadmissible at trial.

{¶25} Risner next claims that Detective Salyer's testimony that Cliff and Jackie had informed Detective Salyer that Risner had confessed to them that Risner committed the robbery was inadmissible. Statements which are offered to explain a police officer's conduct while investigating a crime are likewise not inadmissible hearsay. *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist.1987); *Fairfield v. Tillett*, 12th Dist. No. CA89-05-073, 1990 WL 49996. Detective Salyer's statement was not offered for its truth but rather to explain his conduct

and his decision to arrest Risner. As such, these statements were not inadmissible hearsay and were not prohibited by Evid.R. 801(C).

{¶26} However, even if the statements were improper, any impropriety in allowing the statements to be made was later cured when Cliff and Whiteaker testified to hearing Risner confess to the crime and were each subject to cross-examination on the statements. At that point the testimony was properly entered into evidence (as an admission of a party opponent) and any earlier inappropriate hearsay at the trial would have been merely cumulative. Since the testimony was cumulative, Risner cannot maintain the argument that but-for the introduction of that testimony the outcome at trial would have been different; therefore, even if the statements were inadmissible, we do not find the statements prejudicial.

{¶27} Next, Risner argues that the State's opening statement was a "harbinger" of massive hearsay that was to be admitted at trial and was, therefore, inadmissible. The opening statements of counsel are not evidence. *State v. Frazier*, 73 Ohio St.3d 323 (1995). "The purpose of opening statements is to inform the jury of the nature of the case and to outline the facts that each party will attempt to prove." *Maggio v. Cleveland*, 151 Ohio St. 136, (1949), paragraph one of the syllabus. "In general, a statement made by counsel of the evidence that he expects to introduce is not reversible error unless it appears that counsel made the statement in bad faith, even if it turned out that such evidence was incompetent"

(Internal quotations omitted.)  *State v. Neal*, 10th Dist. No. 95APA05-542, at *12, quoting *State v. Lipker*, 16 Ohio App.2d 21 (4th Dist.1968).

{¶28} In his brief, Risner cites to sections of opening statements wherein the State informed the jury that the State expected Cliff Risner and Jackie Whiteaker to testify that Risner had told them Risner committed the robbery.  (Tr. at 55, 58).  As was discussed previously, these statements were not improper.  In addition, the court informed the jury on three separate occasions that opening statements were not to be considered as evidence.  (Tr. at 45, 49, 226).  We must presume that the jury followed the trial court's instructions when deliberating in this matter.  *See State v. Downing*, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 51.

{¶29} Next, Risner argues Diane Sheer's testimony that Whiteaker called her on the night of the robbery and asked her for a ride was hearsay and Diane's statement that Diane and Whiteaker had to wait for Risner because Risner was in the area was inadmissible hearsay.  First, we find that these statements were not offered for the truth of the matter asserted and therefore are not hearsay.  Second, any statements here were merely cumulative to the testimony already given by Whiteaker.

{¶30} Risner next claims that Detective Salyer's testimony that Diane Sheer had given him consistent statements was inadmissible hearsay.  First, we do not find any indication in the pages cited by Risner (Tr. 181-82) that Detective

Salyer ever stated that Diane Sheer had given him consistent statements. The closest piece of testimony in those pages was a statement where the State asked, "So did you go back to Diane and talk to her?" And the response was, "Yes I did." (Tr. at 181). We do not find these statements or any testimony on the pages cited to be inappropriate, as they again show only the course of the investigation. Furthermore, Diane Sheer testified at trial and any statements made by Detective Salyer were merely cumulative to Sheer's retelling of the events.

{¶31} Finally, Risner argues that the State made improper statements during closing arguments. "Parties have wide latitude in their closing statements, particularly 'latitude as to what the evidence has shown and what inferences can be drawn from the evidence.'" *State v. Wolff*, 7th Dist. No. 07 MA 166, 2009-Ohio-7085, at ¶ 13, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶ 213. A prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, at ¶ 116.

{¶32} In this case, Risner argues that the State improperly bolstered the credibility of its witnesses by arguing that its witnesses' stories were consistent with each other. However, we do not find that this is an improper inference drawn from the evidence and therefore we find no error. Moreover, jurors were

instructed that closing arguments were not to be considered as evidence and the jurors are presumed to follow that instruction. (Tr. at 226).

{¶33} Accordingly, we find Risner's arguments without merit and his first assignment of error is overruled.

*Second Assignment of Error*

{¶34} In Risner's second assignment of error, Risner challenges the admissibility of testimony from several of the State's witnesses that on the night of the robbery Risner was using crack cocaine. Specifically, Risner argues that Cliff Risner, Jackie Whiteaker, and Diane Sheer testified at trial that they had all been smoking crack cocaine with Risner on the night of the robbery. (Tr. at 99, 127, 128, 136, 152, 169, 201).

{¶35} Risner argues on appeal that "other acts" testimony regarding drug use was not related to the criminal charges and was therefore highly prejudicial. Evid.R. 404(B). Risner also argues that the testimony was improper to show that Risner acted in conformity with his character on this particular occasion. *State v. Hector*, 19 Ohio St.2d 167, 175-76 (1969).

{¶36} First, the testimony presented by all of the witnesses whom testified that they were doing drugs with Risner on the night of the crime was part of a consistent narrative describing the activities of the evening in question and the whereabouts of Risner and the witnesses. For example, both Cliff Risner and

-15-

Jackie Whiteaker testified that prior to the robbery they were with Risner at Whiteaker's apartment and that Cliff and Risner were smoking crack. At one point both Risner and Whiteaker left. During that period of time, Varsity was robbed. Afterward, Diane Sheer picked up Jackie, Cliff, and Risner and they all went back to Diane's house and smoked crack. At this point, Risner confessed separately to Whiteaker and Cliff that he committed the crime.

{¶37} Second, all of the witnesses that testified Risner was using drugs also admitted to using drugs along with Risner, so any prejudice against Risner would be counterbalanced by the similar decreased credibility in the State's witnesses resulting from the same drug use.

{¶38} Finally, we note that the State argues that drug use could also be introduced to show motive for the crime, and therefore would fall under an exception and be admissible into evidence even if it should have otherwise been excluded. Evid.R. 404(B). We find that these were all valid arguments in support of the trial court's decision to allow the testimony.

{¶39} Next, Risner argues that the State's comment in opening statement that drugs were found in the vehicle in which Risner was riding was inappropriate and prejudicial. However, as was discussed in the first assignment of error, the jury was instructed three times that opening statements were not evidence and the jury is presumed to have followed that instruction.

{¶40} Finally, Risner argues that the State made an improper statement regarding Risner's drug usage in closing arguments. First, we find that the statement was not an improper statement. In its rebuttal closing argument, the State said, "[Risner's] hanging out with crack dealers and crack users, he uses cocaine. When he's booked in the jail on the 14th, the jailor noted he was under the influence of drugs yet he denies it." (Tr. at 237-238). The State was merely challenging Risner's credibility and bolstering the credibility of its witnesses after Risner had attacked the credibility of the State's witnesses on closing argument. (Tr. at 235). The State made appropriate responses to defense arguments based upon the evidence and stated them to the jury. As such, we do not find these statements to be prejudicial. Furthermore, the jury was instructed that closing arguments were not evidence and is presumed to have followed that instruction. Accordingly, Risner's second assignment of error is overruled.

*Third Assignment of Error*

{¶41} In Risner's third assignment of error, Risner argues that the court erred by allowing the State to cross-examine Risner as to the specifics of Risner's prior felony conviction. Specifically, Risner argues that the following exchange that took place between Risner and the State when Risner was on the stand elicited inadmissible testimony:

**Q: Back in 2007 – by the way, you're a convicted felon, right?**

**A: Right.**

**Q: Convicted of aggravated assault?**

**A: (Nods head).**

**Q: A felony.**

**A: (Nods head).**

**Q: And you've been to prison for that, correct?**

**A: Correct.**

**Q: And you were on probation as well. 2007 you tested positive for cocaine.**

**A: Yes, I did.**

**Q: So you do use drugs.**

**A: I don't know.**

**Q: Oh, so everyone that testified – Cliff, your cousin, Diane, Jackie – they're all smoking crack except you.**

**A: Absolutely.**

(Tr. at 217-218).

**{¶42}** Risner concedes that the State has the right to cross-examine him regarding his prior felony conviction, but he argues that the State went too far in the preceding dialogue. Risner argues that the State wanted the jury to base its verdicts upon testimony concerning drug usage rather than the actual events.

{¶43} However, when Risner took the stand, Risner initially testified that unlike the testimony of Cliff, Diane, and Whiteaker, Risner had not been using crack-cocaine on the night of the incident. The State then questioned Risner regarding Risner testing positive for cocaine when Risner was on community control—this had nothing to do with the specifics of his prior felony conviction and only after Risner repeatedly denied using drugs did the State ask this question. We find no prejudicial error in these circumstances. Accordingly, Risner's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶44} In Risner's fourth assignment of error, Risner argues that the State improperly introduced evidence of Risner's post-miranda silence against Risner in violation of the Fifth Amendment of the United States Constitution.

{¶45} In reviewing claims of prosecutorial misconduct, the test is whether the prosecutor's remarks were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420 (2000). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.,* quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947 (1982). Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be

reversed. *See State v. Underwood*, 2d Dist. No. 24186, 2011-Ohio-5418, ¶ 21. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2nd Dist. No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464 (1986).

**{¶46}** In support of his position that the State violated Risner's right to remain silent, Risner cites *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240 (1976), for the proposition that Risner's post-Miranda silence cannot be used against him. In *Doyle*, the United States Supreme Court reasoned

> **while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.**

*Doyle*, at 426 U.S. at 618.

**{¶47}** However, "if a defendant voluntarily offers information to police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by *Miranda* or *Doyle*." *State v. Osborne*, 50 Ohio St.2d 211, 216 (1977), vacated on other grounds. "If a defendant talks, what he says *or omits* is to be judged on its merits or demerits, and not some artificial standard that only the part that helps him can later be referred to." *State v. Gillard*, 40 Ohio St.3d 226, 232 (1988), abrogated on other grounds. (Emphasis sic.) *See also State v.*

*Jones* (Apr. 29, 1993), Cuyahoga App. No. 62415, *2 (affirming trial court's decision to permit state to question defendant on his "refusal to corroborate his statements to police" where defendant told police that he had not shot anyone but offered an alibi for the first time at trial).

{¶48} The Supreme Court further clarified its decision in *Doyle* by discussing the impact a defendant's choice to testify in his own defense has on the Fifth Amendment.

> **Once a defendant decides to testify, the interest of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination. Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.**

*Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124 (1980).

{¶49} In this case, the record establishes that Detective Salyer took Risner into custody and advised Risner of his *Miranda* rights. Risner then provided a signed waiver of his *Miranda* rights and agreed to speak with Detective Salyer. (State's Ex. 21); (Tr. at 112-113). The language of the waiver reads as follows:

> **Knowing that I have the right to a lawyer before and during the answering of any questions or making any statements; of my right to remain silent at any time, and that anything I say can and will be used against me in a court or courts of law, I choose not to consult with a lawyer or have him present while I am questioned or make any statements about the offense or offenses of which I am suspected, and hereby consent of my own free will**

**and accord to voluntarily make a statement or answer any questions.**

(State's Ex. 21).

**{¶50}** According to Detective Salyer's testimony, after Risner signed the waiver Salyer then spoke with Risner. (Tr. at 112). Salyer testified that Salyer "advised [Risner] of the investigation" regarding Varsity, and that Salyer accused Risner of committing the robbery. (*Id.*) Detective Salyer then testified that Risner made the statement "prove it" and then stopped talking and would not speak further on the matter. (*Id.*)

**{¶51}** This statement was apparently the only statement made by Risner prior to trial until Risner filed a notice of alibi shortly before trial pursuant to Crim.R. 12.1. Risner's notice of alibi asserted that Risner was at Diane Sheer's house at the time of the Varsity robbery. (Doc. 40).

**{¶52}** At trial, Risner then declined to exercise his Fifth Amendment right to remain silent and took the stand in his own defense. Risner testified that during the time of the robbery Risner had gone to McDonalds and ate a couple of double cheeseburgers, effectively giving him an alibi, though not one in accord with the alibi he had filed previously. On cross-examination, the following exchange then took place between the State and Risner.

> **Q:  You tell this jury – in fact, this is the first time the police have heard this – that you went up North Main Street that night up to McDonald's.  Why was your statement to them at the**

**police department, "prove it"? Why didn't you tell them you went up to North Main Street?**

**A: I had nothing else to say because the way he come across me that day. I had set in there for several hours in the holding cell when I heard him questioning everyone else, and then he all the sudden tells me that they are charging me with a robbery. Heavens no, I don't want to talk to him when I was sitting in a holding cell for so long. That's why.**

**Q: You've had the chance for the last couple months here, since October, to tell someone, hey, I wasn't there. I was up on North Main. And you never did that, did you?**

**A: Yes, I have.**

**Q: You didn't tell the police. * * ***

(Tr. at 218-219).

{¶53} In regards to Risner's statement of "prove it" during the initial questioning this statement was made after Risner had waived his right to remain silent and prior to Risner reasserting this right so we therefore find no issue using it at trial. The second part of this questioning, however, does appear to implicate *Doyle* as the State is challenging Risner for remaining silent and not coming forward with Risner's "McDonald's" alibi.

{¶54} First, we note that if Risner had re-implicated his right to remain silent with his statement of "prove it" he waived his right to remain silent when testifying at trial. *State v. Lewis*, 8th Dist. No. 43987, 1982 WL 5352 (May 6, 1982). While this does not allow for questioning during the period of silence, it

does allow for the State to, in a limited manner, challenge Risner's alibi once he took the stand. *Id*. As Risner had filed a 'notice of alibi' containing a different alibi than the one he testified to at trial, we do not find the State's limited probing of the matter inappropriate.

{¶55} Second, Risner was able to testify on the stand as to why he did not make an earlier statement to the police. Moreover, the State could have, but did not, challenge Risner on the basis that he had filed a 'notice of alibi' containing a different alibi altogether. Under Crim.R. 12.1, a defendant that intends to use an alibi at trial has to notify the state at least seven days before trial. Risner did notify the State, but he notified the State of a different alibi. The State was thus caught totally unaware of Risner's alibi and had no time to investigate it. Under these unique and unusual circumstances, the State should be granted some leeway to impeach Risner's alibi.

{¶56} Finally, we find that even if this was error under *Doyle*, we do not find it to be reversible error. "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983). Other District Courts have found similar inquiries by the State not to be reversible error where the evidence against the defendant was otherwise overwhelming. *See State v.*

*Wilson*, 2nd Dist. No. 24577, 2012-Ohio-3098, ¶ 79; *State v. McClurkin*, 12th Dist. No. CA2007-03-071, 2010-Ohio-1938 ¶ 69, *State v. Morgan*, 2nd Dist. No. 19416, 2004-Ohio-461, ¶ 25. In this case, there was overwhelming evidence. Risner matched the description of the perpetrator given by Courtney Mullins, Risner confessed to the crime to two witnesses, and Risner's DNA was found on the gloves used in the robbery. Based upon this evidence, we cannot find that the limited questioning mentioned above, even if it was error, so tainted the trial as to merit reversal. Accordingly, Risner's fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶57} In Risner's fifth assignment of error, Risner argues that his trial counsel was ineffective for failing to object to the testimony in assignments of error 1-4. Risner argues on appeal that this failure to object individually and cumulatively establishes that counsel's performance was deficient and that such failure was prejudicial.

{¶58} "Reversal of convictions on ineffective assistance requires the defendant to show 'first that counsel's performance was deficient and, second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'" *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751 at ¶105, quoting *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052 (1984). When considering a claim of ineffective assistance of counsel, the court "must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

**{¶59}** A tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Timm*, 3d Dist. No. 13-11-23, 2012-Ohio-410, ¶ 31. "Furthermore, trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Turks*, 3d. Dist. No. 1-08-44, 2009-Ohio-1837, ¶ 43, citing *State v. McKinney*, 11th Dist. No. 2007-T-0004, 2008-Ohio-3256, ¶ 191; *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995); *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103.

**{¶60}** First, we would note that none of the testimony which defense counsel failed to object to at trial in the first and third assignments of error was found to be erroneously admitted into evidence. Therefore, trial counsel's failure to object was not "deficient" and no prejudice was present.

**{¶61}** Second, we find no error in defense counsel's failure to object to testimony that his client was using drugs on the night in question (assignment of error 2). A reading of the record illustrates that trial counsel's strategy was to discredit the State's witnesses as drug users and point to Cliff Risner as the potential perpetrator of the crime. Many of the pieces of evidence that Risner's

trial counsel did not object to were not inconsistent with the story that Risner's counsel was trying to present. In addition, the drug testimony, as stated earlier, equally prejudiced the State's witnesses. Therefore, we find that trial counsel's failure to object was not error and was part of a legitimate trial strategy.

{¶62} As to Risner's counsel's failure to object to the testimony described in the fourth assignment of error, we have again found no error was present. However, if there was error in allowing the State to inquire into Risner's alibi, we found such an error harmless and that the error did not affect the outcome of the trial. Thus even if there was an error in counsel's failure to object, any error would not be prejudicial and an ineffective assistance argument cannot be sustained.

{¶63} Finally, as there is no indication of multiple errors to justify any "cumulative" argument, we also find Risner's argument that counsel's failure to object cumulatively prejudiced Risner to be without merit. Accordingly, Risner's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶64} In Risner's sixth assignment of error, Risner argues that the trial court erred by imposing sanctions in its sentencing entry that the court had not imposed in open court at the sentencing hearing. Specifically Risner argues that the trial court ordered Risner to pay $424.00 in restitution to Varsity and that the

trial court ordered Risner to pay court costs in its entry without informing Risner at the sentencing hearing that he would be ordered to pay.

{¶65} Risner cites the case of *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, for the proposition that court costs may not be imposed in a judgment entry when they were not imposed in open court. According to *Joseph*, a case remanded to the trial court for this error is done so for the *limited* purpose of informing a defendant of costs.

{¶66} In its brief, the State does not contest that there was an error in this instance and concedes that the case should be remanded to the trial court so that the trial court may address the issues of court costs and restitution in open court. Therefore we remand to the trial court for the *limited purpose* of informing Risner that he is being ordered to pay court costs and informing Risner of any restitution in this case so that Risner may have a chance to address these issues in open court. Accordingly, Risner's sixth assignment of error is sustained.

{¶67} For the foregoing reasons the February 10, 2012, judgment of the Logan County Common Pleas Court is affirmed in part and reversed and remanded in part for a limited resentencing hearing.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**
**/jlr**